927 P.2d 1298

**STATE of Arizona, Appellee.**

**v.**

**Christopher D. McCRIMMON, Appellant.**

**STATE of Arizona, Appellee,**

**v.**

**Andre Lamont MINNITT, Appellant.**

**Nos. CR–94–0121–AP, CR–94–0270–AP.**

Supreme Court of Arizona,
En Banc.

Nov. 19, 1996.

Grant Woods, Attorney General, Phoenix by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Susanna C. Pineda, Assistant Attorney General, for Appellee.

Carla G. Ryan, Tucson, for Appellant Andre Minnitt.

Harriette P. Levitt, Tucson, for Appellant Christopher McCrimmon.

## OPINION

MOELLER, Justice.

### JURISDICTION

This is a capital case in which we review the convictions of defendants Andre Lamont Minnitt and Christopher Don McCrimmon, who were tried together and convicted of three counts of first degree murder and seven additional counts of armed robbery, aggravated robbery, and burglary. Because defendants were sentenced to death on the

murder counts, appeal is automatic. Ariz. R.Crim. P. 31.2(b). We have jurisdiction pursuant to A.R.S. §§ 13–4031 and 13–4033. Because one of the issues common to both appeals is dispositive, we issue a joint opinion resolving both cases. We reverse.

## FACTS

The trial of this case lasted sixteen days before being submitted to the jury. The jury deliberated just over six hours on Wednesday, November 24, before being excused for the Thanksgiving weekend. Upon returning on Monday, the jury deliberated approximately two-and-a-half hours before announcing that it had reached a verdict.

After the trial judge read the guilty verdicts, he proceeded to poll the jury, beginning with Juror No. 1. Upon being asked "are these your verdicts ... and are these your findings of allegation of dangerous nature?" Juror No. 1 responded "I guess, yeah." Without further comment, the judge proceeded to poll all the other members of the jury. After the other jurors had been polled and all had responded affirmatively that the verdicts were theirs, the judge conferred with counsel at the bench concerning Juror No. 1's response. At this point, Minnitt's lawyer moved for a mistrial on the basis that the jury was not unanimous and should be discharged. Although the record is not perfectly clear, we believe a fair reading of it shows that McCrimmon's lawyer joined in the motion. The judge denied the motions and, instead, instructed Juror No. 1 as follows: [1]

The Court: [Juror No. 1], to the question: "Are these your verdicts and findings of dangerous nature", the law requires that I obtain either a yes answer or a no answer from you.

[Juror No. 1]: I don't know what to say.

The Court: "Yes, these are my verdicts" or "No they are not."

[Juror No. 1]: God, I can't say "yes" and I can't say "no". And to be honest—

The Court: Ladies and gentlemen, I'm going to excuse the jury from the courtroom so I can take matters up with the attorneys at this time.

As soon as the jurors left the courtroom, counsel for both defendants again moved for a mistrial. McCrimmon's lawyer argued that it was clear there was not a unanimous verdict and noted that Juror No. 1 was obviously upset. Minnitt's lawyer joined in the motion, stressing the juror's indecision. The judge then ordered a recess of "15, 20 minutes."

A proceeding was then held in chambers at which the trial judge told counsel that Juror No. 1 had told the bailiff she wanted to talk with the judge in private. The record does not show that the defendants were present, although the trial record regularly showed their presence when they were present. The state and counsel for both defendants consented to the private meeting and defense counsel purported to waive the right of defendants to be present at the meeting, but McCrimmon's lawyer again moved for a mistrial.

At the private meeting between the judge and Juror No. 1, a court reporter was present. The juror first reiterated her indecisiveness, whereupon the judge asked her what her response would be to another polling:

The Court: We plan to go back into the courtroom and I would ask you the same question for the third time.

Juror: Uh-huh.

The Court: And what will your answer be?

Juror: Well it would have to be yes.

The Court: And that is based on proof beyond a reasonable doubt?

Juror: You see, that's the part—that's the part that got to me.

When the judge, after further discussion, again asked the juror what her response to the poll would be, she said that her response would be "I can't say yes and I can't say no."

Following the meeting with the juror, the judge held another meeting with counsel in chambers. There is no indication that the

---

1. When the trial judge indicated to counsel that he intended to give this instruction to Juror No. 1, no one objected. McCrimmon's lawyer did ask, however, that the instruction be given out of the presence of the other jurors. The instruction was given in open court.

defendants were present. The record is devoid of even a purported waiver of defendants' presence at this meeting, yet during the meeting the following events occurred: 1) the judge heard and denied renewed motions for mistrial; 2) the judge indicated, over defense objections, his intention to bring the jury back after lunch and order them to continue deliberations; and 3) the judge and counsel discussed the possibility of further jury instructions.

After lunch the judge met again with counsel without the defendants being present. Once again, no waiver of their presence was obtained from the defendants themselves or even from their counsel. At that meeting, the court reporter read the notes of the judge's private meeting with Juror No. 1, and the judge ruled on additional jury instructions to be given. The judge then reconvened the jury and, in the presence of the defendants, gave two additional instructions which the judge had decided upon in the absence of the defendants.[2]

The jury deliberated for about two hours before returning guilty verdicts on all counts. When the jury was polled on this occasion, each juror, including Juror No. 1, affirmatively responded that these were their individual verdicts. McCrimmon's lawyer renewed her motion for mistrial. The motion was denied.

Following the verdict, both defendants filed motions for new trials, arguing that the verdict was the result of coercion. The trial judge denied the motions, but accepted an offer of proof to the effect that Juror No. 1

"indicated that she still had some doubt and she was very concerned that there was no physical evidence to tie Mr. Minnitt to the crime in El Grande Market." These appeals followed.

## QUESTION PRESENTED

Whether a new trial is required by reason of juror coercion.

## DISCUSSION

### I. A Cautionary Note Concerning Proceedings in the Absence of Defendants in Criminal Cases

█ Defendants each raise serious questions concerning the proceedings held in their absence and, arguably, without their consent. Because we must remand for a new trial on the issue of juror coercion, we do not decide whether defendants would also be entitled to a new trial on this separate ground. We remind counsel and trial courts, however, that proceedings in criminal cases held outside the defendant's presence are fraught with danger and should be conducted, if at all, only for valid reasons and only where the record clearly shows that the defendant has waived his right to be present.

### II. Juror Coercion

#### A. Preservation of Coercion Issue and Standard of Review

█ The state did not challenge the timeliness of the post-verdict motions raising coercion in the trial court, but does challenge

---

2. The following instructions were given:

A defendant in a criminal case is presumed by law to be innocent. The law does not require a defendant to prove his innocence or to produce any evidence.

The burden of proving the defendant guilty beyond a reasonable doubt rests upon the State. This burden never shifts throughout the trial. Evidence which establishes a suspicion or the mere probability of guilt is not enough evidence to prove a person guilty beyond a reasonable doubt.

The term "reasonable doubt" means doubt based upon reason. This doubt does not mean an imaginary or possible doubt. The state is not required to prove the defendants' guilt to a moral certainty.

. . . .

Both the prosecutor and the defendant is [sic] entitled to the individual opinion of each juror. It is the duty of each of you to consider the evidence for the purpose of arriving at a verdict, if you can do so.

Each of you must decide the case for yourself, but should do so only after a discussion of the evidence and the instructions with the other jurors. You should not hesitate to change an opinion if you are convinced it is erroneous. However, you should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor a decision.

Ten minutes after retiring, the jury requested a copy of the new instructions and the request was granted.

the timeliness of one of those motions here. If the motions were untimely, the trial court had no jurisdiction to entertain them on the merits. *See State v. Hickle*, 133 Ariz. 234, 239, 650 P.2d 1216, 1221 (1982); *State v. Hill*, 85 Ariz. 49, 53–54, 330 P.2d 1088, 1090–91 (1958). We do not reach the issue of timeliness of the post-trial motions, because a fair reading of the record indicates that counsel for both defendants did, at trial and in a timely fashion, request mistrials based upon the juror's failure to affirm the verdicts and the events flowing therefrom. In any event, in *State v. Lautzenheiser*, 180 Ariz. 7, 881 P.2d 339 (1994), we held that it is fundamental error "whenever a judge improperly influences or coerces a verdict." *Id.* at 10, 881 P.2d at 342. Therefore, a finding of coerciveness would support a finding of fundamental error. However, as we have pointed out, in this case counsel adequately preserved the issue of coercion through their motions for mistrial. Accordingly, we review the trial court's denial of the motions for mistrial for clear abuse of discretion. *State v. Murray*, 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2535, 135 L.Ed.2d 1057 (1996); *State v. Stuard*, 176 Ariz. 589, 601, 863 P.2d 881, 893 (1993).

■ "The test of coerciveness is whether the trial court's actions or remarks, viewed in the totality of circumstances, displaced the independent judgment of the jurors." *State v. McCutcheon*, 150 Ariz. 317, 320, 723 P.2d 666, 669 (1986); *see Lautzenheiser*, 180 Ariz. at 9, 881 P.2d at 341; *State v. Roberts*, 131 Ariz. 513, 515–16, 642 P.2d 858, 860–61 (1982).

### B. Polling of the Jury

■ The trial court continued to poll the remaining jurors after Juror No. 1 had failed to affirm the verdict.[3] The Eleventh Circuit has established a per se rule of reversible error when a trial court continues polling the jury once a juror has failed to indicate agreement with the verdict. *United States v. Spitz*, 696 F.2d 916, 916–17 (11th Cir.1983). *Spitz* relied on the United States Supreme Court case of *Brasfield v. United States*, 272

U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926), which did not involve polling but did condemn inquiry into the numerical division of the jury during deliberations. According to the *Brasfield* Court:

> [T]he inquiry [into numerical division] itself should be regarded as a ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive.

272 U.S. at 450, 47 S.Ct. at 135–36.

■ Arizona case law also condemns inquiry into the numerical division of a reportedly deadlocked jury. Continuing the polling process in this case once a problem was known had the effect of revealing the numerical division, in this case eleven to one. However, like other courts, "[W]e do not accept the *Brasfield per se* rule, believing that the totality of the circumstances rule is more just and sensible." *Roberts*, 131 Ariz. at 516, 642 P.2d at 861; *see also United States v. Fiorilla*, 850 F.2d 172, 175–76 (3rd Cir.), *cert. denied*, 488 U.S. 966, 109 S.Ct. 492 (1988); *Amos v. United States*, 496 F.2d 1269, 1273 (8th Cir.), *cert. denied*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 140 (1974); *United States v. Brooks*, 420 F.2d 1350, 1354 (D.C.Cir.1969). Nonetheless, the fact that the numerical division of the jury was revealed can be an important factor when considering the totality of the circumstances. In *State v. McCutcheon*, we said: "When the numerical division is known, particularly if the division is lopsided, encouraging the jury to decide can amount to coercion." 150 Ariz. at 320, 723 P.2d at 669.

Disclosing the numerical division will not always indicate a coerced verdict. In *Roberts*, we found that the trial court did not coerce the jury into pronouncing a guilty verdict, even though it asked for the numerical division before sending the jurors back

---

**3.** Admittedly, Juror No. 1's response of "I guess, yeah" is not as clear a lack of affirmation as

"No," such as was present in *Lautzenheiser*, 180 Ariz. at 8, 881 P.2d at 340.

for further deliberations. 131 Ariz. at 515–16, 642 P.2d at 860–61. In *Roberts,* however, the trial court specifically asked not to be told which side had the majority before being informed that the split was eleven to one. *Id.* at 515, 642 P.2d at 861. Also, the sole dissenter in that case was not identified to the court. *Id.*

Here, Juror No. 1 was singled out twice during the polling process as the only juror who did not agree with the verdict. Once the numerical division was known, the trial court repeatedly told her, once in open court, and thereafter in their private meeting, that she would have to decide whether she agreed with the guilty verdicts. The court sent her a clear message that being undecided was unacceptable. It never explained to her that an inability to find guilt beyond a reasonable doubt could be considered as a disaffirmation of the verdict.

## C. Other Circumstances

We have regularly condemned ex parte communications between judge and jury. *See, e.g., State v. Rich,* 184 Ariz. 179, 180–81, 907 P.2d 1382, 1383–84 (1995); *Perkins v. Komarnyckyj,* 172 Ariz. 115, 117, 834 P.2d 1260, 1262 (1992); *State v. Koch,* 138 Ariz. 99, 106–07, 673 P.2d 297, 304–05 (1983). The United States Supreme Court has noted:

Any ex parte meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities for error.... [E]ven an experienced trial judge cannot be certain to avoid all the pitfalls inherent in such an enterprise. First, it is difficult to contain, much less to anticipate, the direction the conversation will take at such a meeting. Unexpected questions or comments can generate unintended and misleading impressions of the judge's subjective personal views which have no place in his instruction to the jury—all the more so when counsel are not present to challenge the statements.

*United States v. United States Gypsum Co.,* 438 U.S. 422, 460, 98 S.Ct. 2864, 2885, 57 L.Ed.2d 854 (1978). We believe the Court's concerns apply equally to any contact between a judge and any member of a deliberating jury.

In the view of the California Supreme Court, when a trial judge knows how many jurors stand on each side of the ultimate issue of guilt and urges the jury to return a verdict it "creates in the jury the impression that the court, which has also heard the testimony in the case, agrees with the majority of jurors. Coercion of the jurors in the minority clearly results." *People v. Carter,* 68 Cal.2d 810, 69 Cal.Rptr. 297, 442 P.2d 353, 357 (1968). We fear that the trial court in this case inadvertently created an atmosphere of coercion when it repeatedly communicated the implicit message to the lone hold-out juror that being undecided about a guilty verdict was unacceptable. The problem was further exacerbated by the supplemental instructions given to the jury before being returned for further deliberations. These instructions informed the jurors, including the lone unconvinced juror, that it was their duty "to consider the evidence for the purpose of arriving at a verdict" and that "[y]ou should not hesitate to change an opinion if you are convinced it is erroneous." The only verdict that could have realistically appeared within reach to the sole indecisive juror was a guilty verdict.[4]

 Whenever possible, trial courts should avoid ex parte communications with jurors, even at a juror's request and even if counsel consent. This, of course, is particularly true during jury deliberations. The possibility of coercion or other error is too great. When the polling of a jury presents a potential problem, Rule 23.4 of the Arizona Rules of Criminal Procedure provides the safest alternatives: "If the responses to the jurors do not support the verdict, the court may direct them to retire for further deliberations or they may be discharged." Of

---

**4.** We recognize that the instruction given is not an uncommon one and includes language to the effect that jurors "should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor a decision." In many cases, use of the instruction would be entirely appropriate. Given all the events that preceded it in this particular case, we are not persuaded that its precautionary language alone could overcome the totality of the coercive circumstances.

course, a trial judge has discretion to make discreet inquiries of the jury as a whole to decide whether the jury is deadlocked or whether further deliberations might be useful. *See Roberts*, 131 Ariz. at 516, 642 P.2d at 861; *State v. McAnulty*, 184 Ariz. 399, 404–05, 909 P.2d 466, 471–72 (App.1995). That was never done here. Recent amendments to our jury rules provide guidance and suggestions to trial courts faced with potentially deadlocked juries. *See* Ariz. R.Crim. P. 22.4, effective December 1, 1995, and Comment thereto.

From all indications, Juror No. 1 requested the meeting with the judge in the hope that it would help her decide how she should vote or to explain her reservations about the "verdict." Under the circumstances of this case, the private meeting between judge and juror was antithetical to a juror's responsibility to make independent decisions. No matter how hard the judge tried to avoid it, some type of influence and coercion was inevitable.

We therefore hold, under the totality of the circumstances, that because it is sufficiently clear the jury process was contaminated, the trial court abused its discretion when it denied defendants' motions for mistrial based on coercion.

### ISSUES WHICH MAY ARISE AT RETRIAL

#### I. Sufficiency of the Evidence

Defendants claimed in the trial court and in this court that there was insufficient evidence to support a verdict of guilty. Because that contention, if correct, would bar a retrial, we address it. *See State v. Hill*, 174 Ariz. 313, 318, 848 P.2d 1375, 1380, *cert. denied*, 510 U.S. 898, 114 S.Ct. 268, 126 L.Ed.2d 219 (1993) ("A judgment of acquittal is appropriate when there is 'no substantial evidence to warrant a conviction.'" (quoting Ariz. R.Crim. P. 20(a))); *see also State v. Scott*, 113 Ariz. 423, 424–25, 555 P.2d 1117, 1118–19 (1976) ("As long as there is substantial supporting evidence, we will not disturb [the jury's] determination."). Our reading of the trial transcript persuades us that neither defendant has met the standard for a Rule 20

acquittal. The evidence was indeed substantial.

#### II. Severance

The trial court denied defendants' motions for severance. We do not reach the merits of those motions. If they are renewed prior to the retrial, the trial court now has more information relevant to severance considerations and may proceed accordingly.

### CONCLUSION

Considering the totality of circumstances, we hold that the trial court abused its discretion in denying defendants' motions for mistrial based on the coercion of Juror No. 1. We therefore reverse the convictions and remand this case to the trial court for a new trial.

FELDMAN, C.J., ZLAKET, V.C.J., and MARTONE and JONES, JJ., concur.