31 P.3d 835

**Diane O. YOUNG, Plaintiff–Appellee,**

v.

**Charles N. JOHNSON, Defendant–Appellant.**

**No. 1 CA–CV 00–0159.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 20, 2001.

Sacks Tierney, P.A., by Kraig J. Marton, Scottsdale, and Grant, Williams, Lake & Dangerfield, by Maria C. Speth, Adam Kunz, Phoenix, Attorneys for Defendant–Appellant Johnson.

The Langerman Law Offices, by Amy G. Langerman, Phoenix and, The Cohen Law Firm, by Larry J. Cohen, Phoenix, Attorneys for Plaintiff–Appellee Young.

## OPINION

TIMMER, Presiding Judge.

¶ 1 A jury awarded Diane Young compensatory and punitive damages for the assault and battery she suffered at the hands of Charles Johnson, her former husband. On appeal, Johnson challenges the judgment on several grounds, but the following issue is dispositive: is Johnson entitled to a new trial because the trial court erred by excusing a juror from further service on the fourth day of the seven-day trial? Because we answer this question affirmatively, we must reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Young and Johnson were married in February 1993. The marriage was stormy, and the couple ultimately divorced in September 1997. Young eventually sued Johnson for assault, battery, and intentional infliction of emotional distress. She also asserted a claim under the Violence Against Women Act, 42 U.S.C. § 13981 (1994) ("VAWA") (held unconstitutional in *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000)).

¶ 3 Trial commenced on May 18, 1999, and nine jurors were empaneled to decide the case. From the outset, the jurors actively submitted written questions to witnesses. *See* Ariz. R. Civ. P. 39(b)(10) ("Jurors shall be permitted to submit to the court written questions directed to witnesses. . . ."). Juror # 8 was particularly active in submitting questions. Johnson contends, and Young does not dispute, that by the end of the fourth day of trial, Juror # 8 had submitted 43 questions to witnesses called by Young.[1] The juror generally presented her questions as testimony unfolded and before Johnson had an opportunity to conduct cross-examination.

¶ 4 During an in-chambers conference held in the afternoon on the fourth day of trial, a Friday, Young's attorneys expressed their concern that Juror # 8 was advocating Johnson's position through her questions and inappropriately communicating with other jurors after her questions were answered. The judge responded that he had "neutralized" some of the questions by re-phrasing them. After explaining their fear that Juror # 8 had already decided the case, Young's counsel asked if it would be appropriate to question the juror about "what's going on." The judge indicated that he had been aware of the problem from the first day of trial and stated that he would give the matter thought over the weekend and perhaps confer with other judges about how to handle the situation.

---

1. Jurors do not affix their names to questions. Ariz. R. Civ. P. 39(b)(10) cmt. However, the parties and the court could identify Juror # 8's inquiries because she asked the bulk of questions, and they were submitted in distinctive handwriting.

¶ 5 Before recessing the trial for the day, the judge instructed the jurors to keep their questions to witnesses as fair and neutral as possible. After excusing the jury, the judge and counsel met in chambers to discuss various issues. At that time, Young's attorneys again complained that Juror # 8 was inappropriately communicating with fellow jurors. They also described her as appearing "smug" while she penned her adversarial questions "as though she ... is doing the defense job." The judge ended the discussion by stating that he was "concerned enough that [he would] deal with it at some level."

¶ 6 On the morning of the fifth day of trial, Young filed a motion to dismiss Juror # 8 and argued that the juror's questions to witnesses revealed clear bias against Young. The parties argued the motion to the court prior to resuming the presentation of evidence to the jury. During argument, the judge observed that nine out of ten questions submitted by Juror # 8 favored the defense and had an adversarial tone. Eventually, the judge took the motion under advisement, stating that, in light of his admonition to the jury given on the previous trial day, he wanted to observe how Juror # 8 asked questions before ruling on Young's motion.

¶ 7 Before the judge recessed the in-chambers proceeding, he was informed that Juror # 8 had requested to speak with the court about missing the next day's morning session in order to attend the funeral of. her goddaughter, who had died over the weekend. After the judge communicated the request to the parties, Young's counsel responded that excusing Juror # 8 from further service would be an "an easy solution" to the problem that comes "from a higher authority." The court agreed, stating that, "I think we should do that because we are on a tight schedule and we can't recess for half a day to accommodate her, so I think we just got our easy out." Johnson's counsel asked the judge to "give her the opportunity that, should [Juror # 8] prefer to be here rather than at her god-daughter's [sic] funeral, that

she [have] that choice." The court did not respond to the request, but queried whether the parties needed to be present while he spoke with Juror # 8. The parties agreed that they did not need to attend the meeting.

¶ 8 The judge next met with Juror # 8 in his chambers.[2] The judge began the discussion by stating his understanding that Juror # 8 "need[ed] to go to [the] funeral." Juror # 8 responded that she did not need to attend but desired to do so and could return for jury duty immediately after the service. She also related that she had previously had temporary custody of her goddaughter for a four-month period and then stated that it "depends on how well I do [at] the viewing tonight as to how well I do tomorrow." The judge then stated that he wished to excuse her from jury service to "free [her] up emotionally" and allow her to attend to family matters. Juror # 8 immediately answered that she wanted to remain on the jury and that she would forego attending the funeral. The judge then encouraged the juror to reconsider the wisdom of her decision. Although Juror # 8 never asked to be excused in order to attend the funeral, she eventually declared that she would "go with whatever [the judge] wish[ed]." The court then excused her from the jury.

¶ 9 After concluding his meeting with Juror # 8, the judge joined the parties, counsel, and the jury in the courtroom and announced that he had excused Juror # 8 from further service to allow her to attend a funeral and because the court "simply can't recess the trial." He did not inform counsel that Juror # 8 had wanted to remain on the jury.

¶ 10 Ultimately, the jury returned a unanimous verdict for Johnson on the intentional infliction of emotional distress and VAWA claims. However, the jury unanimously found Johnson liable on the assault and battery claims, and five of the jurors awarded Young compensatory and punitive damages.[3]

¶ 11 Following the verdict, Johnson filed a motion for relief from judgment/new trial

2. The meeting was recorded by videotape as part of a "Video Court Reporting Pilot Project."

3. At the commencement of the trial, the parties had agreed to accept a verdict from five of seven jurors, if necessary. Indeed, before the conclusion of the trial, another juror was excused from service, leaving only seven jurors to decide the case.

based, in part, on the court's excusal of Juror # 8, and the court denied it. In his order, the judge stated that prior to speaking with Juror # 8, he had refused Young's request to strike the juror for bias. The court then stated that Johnson had waived his right to object to the excusal of Juror # 8 by agreeing to allow the judge to meet with her alone. Alternatively, the judge concluded that he had acted appropriately because Juror # 8 was emotional and "should not have been forced to choose between a funeral and jury service." This appeal followed.

## DISCUSSION

¶ 12 Johnson argues that the trial court erred by excusing Juror # 8 from the jury, and we must, therefore, reverse and remand for a new trial. Before addressing the merits of this argument, however, we consider Young's potentially dispositive contention that Johnson waived his right to contest the judge's decision to excuse the juror.

### I. Waiver

¶ 13 Young argues that Johnson waived his right to complain about the trial court's excusal of Juror # 8 because he (1) agreed to allow the judge to meet with the juror alone and "make a determination about how best to deal with the situation," and (2) failed to object to the excusal at the time it occurred. Johnson does not dispute that he waived his right to object to the judge's discussion with Juror # 8 about her desire to attend the funeral. He contends, however, that his waiver was limited to this topic and did not prevent him from later challenging the judge's decision to excuse the juror after she expressed her desire to forego the funeral and remain on the jury. He further argues that he did not waive the issue by failing to object at the time of the excusal, because he was not then on notice of the circumstances surrounding Juror # 8's excusal.

¶ 14 It is evident from the record that the parties and the judge anticipated that Juror # 8 would ask to forego continued jury service and attend the funeral once she was told that the judge would not recess the trial. Significantly, the parties did not discuss or agree upon how the judge should proceed if the juror elected to remain on the jury. In the absence of such an agreement, we decide that Johnson did not waive his right to challenge the excusal of Juror # 8 by merely agreeing to the *ex parte* discussion. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 461, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (although all counsel agreed to allow the judge to speak alone with the foreman about the status of deliberations, they did not agree that the judge could impart additional instructions, and the judge's comments were therefore unauthorized).

¶ 15 We also conclude that Johnson did not waive the issue by failing to object to the excusal when it occurred. First, Johnson was not present when the judge excused Juror # 8 and obviously did not have the opportunity, therefore, to object at that time. Second, the judge did not inform counsel that he had excused Juror # 8 after she had elected to remain on the jury. *See Gypsum*, 438 U.S. at 461, 98 S.Ct. 2864 (parties' acquiescence to *ex parte* meeting between judge and juror did not waive "right to a full and accurate report of what transpired"). Instead, when the case reconvened in the courtroom, the judge told the jury and the parties that he had excused Juror # 8 to allow her to attend the funeral and because he could not recess the trial. Nothing in the judge's comments reasonably alerted Johnson to the nature of the conversation between the judge and Juror # 8, thereby imposing an obligation on Johnson to inquire further about the discussion, object to the excusal, or accept the decision. *See SMP II Ltd. P'ship v. Ariz. Dep't of Rev.*, 188 Ariz. 320, 324, 935 P.2d 898, 902 (App.1996) ("without knowledge of a right there can be no waiver" of objection); *State v. Hilliard*, 133 Ariz. 364, 365, 651 P.2d 892, 893 (App.1982) (party had no opportunity to voice objection to judge's *ex parte* contact with jurors when record did not reveal counsel's knowledge of contact).

¶ 16 For these reasons, we hold that Johnson did not waive his right to challenge the judge's decision to excuse Juror # 8 after she expressed her desire to forego the funeral and remain on the jury.

### II. The *Ex Parte* Determination

¶ 17 Johnson contends that the judge erred by determining on an *ex parte* basis

**66**

that Juror # 8 should be excused, and a new trial is required for that reason alone. He relies primarily on *Perkins v. Komarnyckyj*, 172 Ariz. 115, 118, 834 P.2d 1260, 1263 (1992), which emphasized that "trial judges should not communicate with the jury regarding substantive legal issues or matters of substantial procedural importance without first notifying and giving counsel an opportunity to state their positions and make whatever record·is appropriate." Young does not contest this principle but essentially argues that the judge did not violate it in this case, because he notified counsel of Juror # 8's request, and they allowed the judge to handle it alone.

■ ¶ 18 We agree with Johnson that the judge erred by excusing Juror # 8 under the circumstances of this case without first consulting with the parties. As set forth previously, ¶ 14, *supra*, the parties authorized the judge to meet with Juror # 8 for the limited purpose of informing her that he would not accommodate her request and then determining *how she wished to proceed.*[4] Once Juror # 8 expressed her desire to remain on the jury rather than attend the funeral, however, the judge should have ended the meeting and reported the conversation to the parties. If the judge had concerns about the juror's ability to continue as a juror, he could have *conducted an appropriate inquiry of the juror* in the presence of counsel. Counsel would then have had an opportunity to voice their positions for the benefit of the judge and the record. This procedure would have been particularly appropriate in this case in light

of the pending, and contested, motion to dismiss this juror for bias,[5] and the judge's prior comments that he was "concerned enough that [he would] deal with [the manner in which Juror # 8 conducted herself] at some level," and that Juror # 8's request provided an "easy out" to the problem.

■ ¶ 19 For these reasons, we conclude that the judge erred by failing to terminate his *ex parte* contact with Juror # 8 once she expressed her desire to remain on the jury rather than attend the funeral and by excusing her from continued jury service without first consulting with the parties. A new trial is only required, however, if the judge erred in excusing Juror # 8, and the error prejudiced Johnson's right to a jury trial. *Perkins*, 172 Ariz. at 119–20, 834 P.2d at 1264–65; *Duran v. Safeway Stores, Inc.*, 151 Ariz. 233, 235, 726 P.2d 1102, 1104 (App.1986). We now turn to that issue.

**III. Excusal of Juror # 8**

■ ¶ 20 Johnson argues that the trial court deprived him of his right to a jury trial guaranteed by the state and federal constitutions by "forcing" Juror # 8 from the jury without a legally sufficient basis. *See* U.S. Const. amend. VII ("In Suits at common law, ... the right of trial by jury shall be preserved, ..."); Ariz. Const. art. 6, § 17 ("The right of jury trial as provided by this Constitution shall remain inviolate, ..."). We review the court's decision to excuse Juror # 8 for an abuse of discretion. *State v. Arnett*, 119 Ariz. 38, 50, 579 P.2d 542, 554 (1978).

■ ¶ 21 We first address the trial court's authority to "excuse" a juror.[6] Arizona Re-

---

4. We echo the advice imparted in other decisions that trial court judges should refrain from communicating with jurors *ex parte* even with counsel's permission. *See State v. McCrimmon*, 187 Ariz. 169, 173, 927 P.2d 1298, 1302 (1996) ("Whenever possible, trial courts should avoid *ex parte* communications with jurors, even at a juror's request and even if counsel consent."); *State v. Rich*, 184 Ariz. 179, 180, 907 P.2d 1382, 1383 (1995) (collecting cases). As noted by the Supreme Court, albeit in the context of a deliberating jury, such communications are "pregnant with possibilities for error" and should be avoided. *Gypsum Co.*, 438 U.S. at 460, 98 S.Ct. 2864.

5. In his order denying the motion for new trial, the judge mistakenly stated that before excusing

Juror # 8 he had denied Young's motion to disqualify the juror. The record is clear that the motion was pending at the time of the excusal.

6. The court must "disqualify" certain persons from serving on the jury, including people who are "biased or prejudiced in favor of or against either of the parties." A.R.S. § 21–211(4) (1990). According to the court, it did not remove Juror # 8 from the jury for reasons of bias. Thus, we do not address Johnson's argument that the record fails to demonstrate that Juror # 8 was "biased or prejudiced" because the judge clearly "excused" rather than "disqualified" Juror # 8, and § 21–211(4) is therefore inapplicable.

vised Statutes § 21–202(2) (1990) provides that the court must excuse persons from jury duty upon their timely application and if, in the court's judgment, their service would "impose an undue hardship." As Johnson points out, Juror # 8 did not ask to be excused from continued service. Consequently, § 21–202 did not authorize the judge to excuse her from the jury. We conclude, however, that the court possesses inherent power to excuse a juror whose ability to perform her duties becomes impaired during the course of the trial, even if the juror does not request excusal. *See Arnett,* 119 Ariz. at 50, 579 P.2d at 554 (acknowledging court's ability to excuse a juror *sua sponte* ); *State v. Superior Court,* 39 Ariz. 242, 247–48, 5 P.2d 192, 194 (1931) (citation omitted) (inherent powers of courts are powers necessary to ordinary and efficient exercise of jurisdiction); *Territory v. Barth,* 2 Ariz. 319, 321, 15 P. 673, 674 (1887) ("[N]o one can doubt for a moment the power and duty of the court to excuse [a] juror.").

¶ 22 Johnson argues that the judge erred in excusing Juror # 8 because he lacked sufficient evidence that the juror was unable to continue her service. Young responds that Juror # 8's comments to the judge supported a conclusion that she "might be too distracted by the death of her god daughter [sic] to properly focus on the trial," and the judge therefore appropriately excused her.

■■■■ ¶ 23 Although we are unaware of any Arizona case that has discussed the attributes of a sufficient reason to excuse a juror from continued service, we agree with other courts that " '[t]here must be some 'sound' basis upon which the trial judge exercise[s] his discretion' to remove the juror." *Green v. Zant,* 715 F.2d 551, 555 (11th Cir. 1983) (quoting *United States v. Rodriguez,* 573 F.2d 330, 332 (5th Cir.1978)); *see also United States v. Fajardo,* 787 F.2d 1523, 1525 (11th Cir.1986) (quotation omitted) (decision to remove juror entrusted to sound discretion of judge " 'whenever facts are presented which convince the trial judge that the juror's ability to perform his duty° as a juror is impaired' "). If the juror's inability to continue to serve is evident to the judge, a hearing on the issue is unnecessary. *Green,* 715 F.2d at 555–56; *see, e.g., Cherry v. Dir., State Bd. of Corr.,* 635 F.2d 414, 416 (5th

Cir.1981) (en banc) (sudden death of juror's parent); *Henderson v. Lane,* 613 F.2d 175, 176 (7th Cir.1980) (heart attack of juror); *Rodriguez,* 573 F.2d at 331–32 (juror fails to appear and reports by telephone his preference to go to work); *United States v. Cameron,* 464 F.2d 333, 334 (3rd Cir.1972) (juror sleeping in court). When a juror's disability is less certain or obvious, however, the judge must sufficiently inquire about the situation in order to properly exercise judicial discretion. *Green,* 715 F.2d at 556; *see, e.g., United States v. Franks,* 511 F.2d 25, 37 n. 19 (6th Cir.1975) (court questioned juror before dismissing for nervous condition).

■■■ ¶ 24 Turning now to the situation presented in this case, we initially note that if Juror # 8 had asked to be excused from the jury in order to attend the funeral, the judge could have decided that continued service would have been an undue hardship for the juror, thereby justifying her excusal without the need for further inquiry. *See, e.g., Cherry,* 635 F.2d at 417. Indeed, after informing Juror # 8 that he could not recess the trial, the judge apparently assumed that she would want to be excused from the jury, but Juror # 8 quickly dispelled this assumption:

THE COURT: So we'd like to just go ahead and excuse you to go ahead and do what you need to do with your family, okay?

JUROR # 8: I don't really [indiscernible]. I want to be here.

THE COURT: You want to be here?

JUROR # 8: I want to be here.

THE COURT: Our problem is I can't recess the trial.

JUROR # 8: That's fine … Then I won't go—I won't go to the services tomorrow. I'm okay—I'm okay with that, really.

Once Juror # 8 stated that she did not need to attend the funeral and preferred to remain on the jury, any inability on her part to continue on the jury became less certain or obvious, and the judge was required to make a sufficient inquiry before excusing her. *See Green,* 715 F.2d at 556.

¶ 25 We have reviewed the videotaped record of the meeting between the judge and Juror # 8 and conclude that the judge failed

to sufficiently ask the juror about her ability to continue on the jury. Instead, the judge tried to convince the juror that she should attend the funeral rather than continue on the jury. Immediately after Juror # 8 stated that she would forego the funeral and stay on the jury, the judge revealed his preference to excuse her:

> THE COURT: You know, I'm seeing tears in your eyes. Why are you doing that?
>
> JUROR # 8: Why am I doing what?
>
> THE COURT: I mean, I can force the issue by just saying that you're excused, you know. I know you put a lot into this, you do ask a lot of questions, and—
>
> JUROR # 8: I'm sorry.

The judge then arguably pressured the juror by informing her that if she remained on the jury, the judge would feel uncomfortable:

> THE COURT: Well, you know, everybody here—I mean, I lost my mother over Christmas, and everybody here knows what it's like to lose a loved one, and there's only going to be one funeral.
>
> JUROR # 8: I know.
>
> THE COURT: And this is a service that you've provided. You've already provided it to this point. Why put yourself through second guessing about going, and I'm going to feel in the wrong place in my own heart by not recessing this trial.
>
> JUROR # 8: I don't want you to recess the trial. I don't want you to recess the trial. That's not—no. Your lives don't need to go on hold because of mine.

The judge next generally discussed the grieving process and mentioned the need to assist the deceased person's family. Juror # 8 then started to explain how her circumstances were different but then ceased her explanation and acceded to the judge's wishes:

> THE COURT: Well, there's some balance here that needs to take place, and the balance is that the loss of a loved one is more important than these two people out in the courtroom.
>
> JUROR # 8: That's true.
>
> THE COURT: Appreciate that. That's something that you'll carry with you the rest of your life.
>
> JUROR # 8: That's true.

> THE COURT: And if she was somebody you had custody of for four months, I mean, I can't imagine not wanting to participate through the process. If nothing else, to be there for the other people in the family.
>
> JUROR # 8: That's true too. But, it's a long, drawn, more detailed thing, but—
>
> THE COURT: Yeah.
>
> JUROR # 8:—that's fine. I'll go with whatever you wish.
>
> THE COURT: All right. Then I'm going to excuse you today.

The judge then thanked Juror # 8 for her service, and she apologized for being "a pain with the questions."

¶ 26 The judge later ruled that he had excused Juror # 8 from further service "to free up an understandably emotional juror to deal with the loss of a loved one." But the judge failed to make a sufficient inquiry of the juror to support this conclusion. He never asked her any questions designed to determine whether she would be emotionally able to continue as a juror if she missed the funeral. For example, he never asked her why she wanted to remain on the jury rather than attend the funeral or if she was close to her goddaughter or the child's family at the time of her death. The juror's answers to such inquiries may not have supported a decision to excuse her from continued service. Indeed, in an affidavit submitted in support of the motion for relief from judgment/new trial, Juror # 8 stated that although she was somewhat upset by her goddaughter's death, it "in no way [would have] prevented [her] from continuing to serve as a juror," and pay attention to the proceedings. She explained that at the time of the child's death she was "not at all close to her parents" and that was "part of the reason why [she] did not feel it all that necessary to attend the funeral."

¶ 27 Additionally, a sufficient inquiry was particularly warranted in light of the pending allegations of Juror # 8's bias to satisfy the parties that the judge excused the juror for appropriate reasons rather than to grant Young the relief she sought in her motion. *See State v. Bible* 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993) (trial judges must avoid any

"appearance of partiality"). A more complete inquiry may have also assured the juror that she was being excused for compassionate reasons rather than being "pushed off" the jury for being "a pain with the questions," as she later expressed in her affidavit.

¶ 28 At oral argument before this court on appeal, Young contended that the judge appropriately based his decision on Juror # 8's demeanor while the judge was speaking, which we could not observe on the videotape. Young is mistaken. The camera remained on the juror's face during the entire conversation, and the videotape does not reveal that Juror # 8 was overly emotional about the death of her goddaughter. Although the judge noted that the juror had tears in her eyes at one point, she appeared composed and was well-spoken throughout the exchange. Moreover, even if tears briefly welled in Juror # 8's eyes, this fact did not make it evident that she should be excused, thereby dispensing with the need to make additional inquiry. *See Green*, 715 F.2d at 555–56. Indeed, she later stated in her affidavit that if she had tears in her eyes it was because she was nervous and "had little to do with the death of [her][g]od-daughter [sic]."

¶ 29 In light of the insufficient inquiry, we conclude that the judge lacked a sound basis to excuse Juror # 8 from continued service and therefore erred by excusing her. We next consider whether this error prejudiced Johnson so as to require a new trial.

## IV. Prejudice

¶ 30 Johnson argues that he did not need to demonstrate actual prejudice stemming from the excusal of Juror # 8, because such prejudice must be conclusively presumed. He relies primarily on our supreme court's decision in *Perkins* to support his contention. After the jury in *Perkins* retired to deliberate the medical malpractice case at issue, it "posed a series of written questions to the judge." 172 Ariz. at 116, 834 P.2d at 1261. Without informing or consulting the parties, the judge erroneously instructed the jury that only the jurors who agreed on liability should fix damages. *Id.* at 117, 834 P.2d at 1262. Ultimately, the jury returned a verdict in favor of the plaintiffs, although two jurors found in favor of the defendants. *Id.* at 116, 834 P.2d at 1261. The supreme court

held that the judge's improper instruction required a new trial on all issues rather than one solely on damages. *Id.* at 120, 834 P.2d at 1265. The court reasoned that because a jury's decision on liability is not final until the verdict is accepted by the trial court, the jury could have reached a different conclusion on the issue of liability while deliberating the amount of damages to award. *Id.* at 119, 834 P.2d at 1264. The court held that removal of two jurors from the deliberative process before its conclusion deprived the defendants "of their right to have all of the jurors participate in deciding all of the issues." *Id.*

¶ 31 Significantly, for purposes of the case before us, the court also held that prejudice is conclusively presumed when the litigant is deprived of an "essential right," and the nature of the error prevents the court from determining the extent of the prejudice. *Id.*; *see also Leavy v. Parsell*, 188 Ariz. 69, 73, 932 P.2d 1340, 1344 (1997) (citation omitted) ("[P]rejudice will be found when there has been significant misconduct affecting the essential rights of a litigant and when the very nature of the misconduct makes it impossible to determine the extent of prejudice."). The court then concluded that the right of trial by jury was an "essential right," and defendants were therefore not required to show actual prejudice in order to secure a new trial. *Perkins*, 172 Ariz. at 119, 834 P.2d at 1264.

¶ 32 Johnson argues that we should apply the *Perkins* holding to this case and decide that he was presumptively prejudiced by the erroneous excusal of Juror # 8. Young counters that *Perkins* is distinguishable because the jurors in that case had commenced deliberations at the time the judge imparted the wrong instruction to them. Because the error here occurred before deliberations, and a fair and impartial jury fully deliberated and returned a verdict, Young contends, Johnson must prove actual prejudice in order to receive a new trial.

¶ 33 For several reasons, we disagree with Young that *Perkins* is inapplicable simply because the error occurred before the start of deliberations. First, the *Perkins* court defined the "essential right" of trial by jury as including "the right to have every

issue tried by the jury that has been *empaneled,* not by two-thirds of that jury, or three-fourths, or any other fraction." *Id.* at 118, 834 P.2d at 1263 (emphasis added). Thus, contrary to Young's contention, we read the court's holding to mean that if a party is wrongfully deprived of its right to have all empaneled jurors decide the case, it loses its essential right to a fair jury trial.

¶ 34 Second, the supreme court has recognized that a judge deprives a litigant of a fair jury by unequally allocating peremptory challenges among the parties or forcing a party to use a peremptory challenge to strike a juror who should have been stricken for cause. *See Wasko v. Frankel,* 116 Ariz. 288, 290, 569 P.2d 230, 232 (1977) ("Peremptory challenges form an effective method of assuring the fairness of a jury trial."); *Moran v. Jones,* 75 Ariz. 175, 181, 253 P.2d 891, 895 (1953) (unlawfully constituted jury deprives parties of right to "fair and impartial jury"). In those cases, the courts presumed prejudice, even though a full complement of seemingly unbiased jurors eventually deliberated and decided the cases. *Id.; Penaskovic v. F.W. Woolworth Co.,* 20 Ariz.App. 403, 405, 513 P.2d 692, 694 (1973) (although no right to a particular juror if jury is fair and impartial, actual prejudice need not be shown when peremptory challenge taken from party). We cannot discern any reason to conclude that prejudice should be presumed if a judge impermissibly interferes with a litigant's selection of jurors, but not if the judge later erroneously excuses a juror from the lawfully empaneled jury. The compelling, common factor in each of these scenarios is that the judge wrongfully interferes with the jury dynamic, and the prejudicial effect of such interference is incapable of assessment.

¶ 35 Third, the *Perkins* court also reasoned that it could not "require a litigant to show the extent of prejudice resulting from an error when, as a practical matter, the nature of the error renders it impossible to prove

the extent of any prejudice." *Id.* at 119, 834 P.2d at 1264. Subsequent to *Perkins,* the supreme court has applied this principle in situations that did not involve the removal of a juror from the deliberative process.[7] *See Leavy,* 188 Ariz. at 73, 932 P.2d at 1344 (prejudice presumed when lawyer deliberately raised "seatbelt defense" and improperly commented on credibility of witness in violation of court order); *Perez v. Cmty. Hosp. of Chandler,* 187 Ariz. 355, 361, 929 P.2d 1303, 1309 (1997) (bailiff gave incorrect answers to jurors' questions without relaying them to judge); *Rich,* 184 Ariz. at 181, 907 P.2d at 1384 (judge failed to notify counsel that jury returned inconsistent guilty verdict on lesser-included offense).

¶ 36 As in the situations presented in *Perkins* and the cases subsequently decided by the supreme court, it is virtually impossible to determine the extent to which Johnson was actually prejudiced by the excusal of Juror # 8. Juror # 8 was permitted to discuss the evidence during recesses in the trial when all of the jurors were present, Ariz. R. Civ. P. 39(f), and may have changed the views of other jurors had she participated in deliberations. *Cf. Wasko,* 116 Ariz. at 290, 569 P.2d at 232 (quotation omitted) ("The juror [who] remained because the plaintiffs [erroneously] had no challenge to remove him may have been a hawk amid seven doves and imposed his will upon them."). On the other hand, the result may have been the same had Juror # 8 remained on the jury. Absent gross speculation, it is simply impossible to assess the impact of Juror # 8's removal from the mix of jurors. Without doubt, however, the judge impermissibly altered the dynamic of the jury by erroneously excusing Juror # 8. Because we cannot ascertain the extent to which this adjustment prejudiced Johnson, we must presume prejudice.

7. Young cites three pre-*Perkins* decisions for the proposition that as long as enough jurors concur in the verdict, any misconduct involving the jury is harmless error. Assuming the ongoing viability of these decisions, however, they are distinguishable because they did not involve errors impacting the constitution of the jury. *See Maxwell v. Aetna Life Ins.,* 143 Ariz. 205, 216, 693 P.2d 348, 359 (App.1984) (two jurors left the room while others continued to deliberate amount of punitive damages); *LeRoy v. Phillips,* 8 Ariz.App. 524, 526, 448 P.2d 94, 96 (1968) (juror did not deliberate for thirty minutes of several-hour deliberation period); *M.O. Simpson v. Heiderich,* 4 Ariz.App. 232, 234, 419 P.2d 362, 364 (1966) (witness spoke with juror during trial recess).

¶ 37 Finally, in light of the obvious difficulties in showing actual prejudice when a juror is wrongfully excused from a jury, adoption of Young's argument would mean that a judge could impermissibly excuse a sitting juror with impunity as long as a full complement of jurors eventually deliberates the case. Such a result would contradict the notion that litigants are entitled to have all empaneled jurors decide a case, absent a legally sufficient ground for excusal or disqualification.

¶ 38 Juror # 8 was indisputably part of the lawfully empaneled jury, and Johnson was therefore deprived of his essential right to a fair jury trial when the judge excused her from the jury without a sound basis for doing so. Because it is impossible to ascertain the extent of any prejudice suffered by Johnson as a result of the error, we must presume such prejudice, reverse the judgment, and remand the case for a new trial.

## CONCLUSION

¶ 39 We hold that the trial court erred by excusing Juror # 8 without a sound basis for doing so. Because the court deprived Johnson of an essential right, and it is impossible to determine the extent of any prejudice to him, we must presume prejudice. Consequently, we reverse the judgment and remand the case for a new trial.

CONCURRING: JON W. THOMPSON, Judge and EDWARD C. VOSS, Judge.