NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TODD STERLING TRACY, *Appellant.*

No. 1 CA-CR 15-0630
FILED 1-5-2017

Appeal from the Superior Court in Mohave County
No. S8015CR201201255
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Harriette P. Levitt, Tucson
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge John C. Gemmill[1] joined.

---

**T H O M P S O N, Judge**:

¶1        Todd Sterling Tracy (Tracy) appeals his convictions and sentences on two counts of assault, class 1 misdemeanors, and three counts of hindering prosecution of a murder, class 3 felonies.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Tracy was indicted on two counts of aggravated assault and three counts of hindering prosecution of a murder. The evidence at trial, viewed in the light most favorable to sustaining the convictions,[2] demonstrated that Tracy, his son Jade, and a friend of Jade's beat up M.C., who had been staying in Tracy's back bedroom, after Tracy's girlfriend complained that M.C. was being rude and making suggestive remarks to her. Tracy and Jade then loaded M.C. into the bed of Tracy's pickup. Jade drove a few blocks and then braked sharply, ejecting M.C. from the back of the truck, along with a tool box, which Jade retrieved. When Jade returned home, he said that he had run over M.C.

¶3        After M.C. was discovered lying in the road, he was flown to a hospital in Las Vegas, where he died shortly afterward. The cause of death was blunt force trauma; the medical examiner testified M.C. likely would have died from the beating, even if he had not been ejected from the truck.

¶4        The day after Jade left M.C. in the road, Tracy told his son Cole to clean up the back bedroom and throw away M.C.'s belongings. The next day, Tracy drove the truck to a friend's house in Golden Valley and

---

[1]        The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        *State v. Boozer*, 221 Ariz. 601, 601, ¶ 2, 212 P.3d 939, 939 (App. 2009).

left it there. Tracy then drove Jade to another friend's house in Kingman so he could hide out and avoid arrest.

¶5 Tracy testified that he did not participate in the beating. Tracy admitted that he had told Cole to clean up the back bedroom, but testified he did so to protect his eight-year-old daughter, who was not at home during the fight. He testified he drove the truck to Golden Valley in part because he had received notice that he would be fined $500 if he did not move the unlicensed truck from his property. He testified he helped Jade hide from police after finding out M.C. had died.

¶6 The jury convicted Tracy of two counts of assault as lesser-included offenses of the charged crimes of aggravated assault, and three counts of hindering prosecution, knowing or having reason to know the offense involved murder. The court sentenced Tracy to time served on the misdemeanor convictions and 2.5 years on each of the hindering prosecution convictions, to be served consecutively. Tracy filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033(A)(1) (2016).[3]

## DISCUSSION

### A. Admission of Statements

¶7 Tracy argues that the court abused its discretion in finding that his statements to police were voluntary, because his statements were induced by threats and promises. At a voluntariness hearing conducted the second day of trial, Detective Brandon Grasse testified that Tracy waived his *Miranda*[4] rights and spoke to him during three separate recorded interviews. Detective Grasse testified that he did not make any threats or promises, and that Tracy was deceptive in all three interviews. After the third interview, Tracy called Detective Grasse and told him he had taken a lot of narcotics on the night in question and did not remember anything, and that M.C. had been beaten up before coming to Tracy's residence; that interview was not recorded. The court found the statements voluntary.

¶8 The state has the burden of proving by a preponderance of the evidence that a statement was voluntary. *State v. Amaya-Ruiz*, 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990). In evaluating voluntariness, the court must

---

[3] We cite the current version of the applicable statute unless revisions material to this decision have occurred since the events in question.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

"look to the totality of the circumstances surrounding the confession and decide whether the will of the defendant has been overborne." *State v. Lopez,* 174 Ariz. 131, 137, 847 P.2d 1078, 1084 (1992). We will not find a statement involuntary unless there exists "both coercive police behavior and a causal relation between the coercive behavior and the defendant's overborne will." *State v. Boggs*, 218 Ariz. 325, 336, ¶ 44, 185 P.3d 111, 122 (2008). We review the trial court's ruling admitting defendant's statements for abuse of discretion, based on the evidence presented at the voluntariness hearing, viewed in the light most favorable to upholding the trial court's ruling. *State v. Ellison*, 213 Ariz. 116, 126 ¶ 25, 140 P.3d 899, 909 (2006).

**¶9** The record fails to reflect that any of the statements made by the interrogating officers resulted in Tracy's will being overborne. Although one of the officers warned Tracy during the first interview that if he wanted to see his daughter again, he needed to start telling the truth, and that she hoped he had kissed his daughter goodbye that day, these remarks had no discernible effect on Tracy or his responses to the officers' questions. And it was Tracy who offered midway through the second interview to tell the officers where Jade was, and then asked if they would drop the charges against him or reduce them "at least down to where I can be with my daughter tonight?" It was only after Tracy told the officers that he was going to tell them where Jade was that one of the officers told Tracy that he could be saving Jade's life by preventing Jade from doing "something dumb" and getting shot. The officer then explained that he was going to charge Tracy with destruction of evidence, but would allow him to return home that night if the information he provided enabled them to locate Jade. Finally, it was only after Tracy told them where Jade was staying that one of the officers warned him that he would be going to jail if he had sent them on a "wild goose chase." The record, in short, supports the trial court's conclusion that neither threats nor promises caused Tracy's will to be overborne, *see Boggs*, 218 Ariz. at 336, ¶ 44, 185 P.3d at 122, and the court did not abuse its discretion in finding the statements voluntary.

### B.   Instructions on Hindering Prosecution

**¶10** Tracy argues that he was denied due process by the court's instructions on hindering prosecution, specifically the court's failure to provide an instruction on hindering prosecution in connection with something less than murder, and its failure to define "extreme indifference" as it related to murder. A party is entitled to an instruction on any theory which is reasonably supported by the evidence. *State v. LaGrand*, 152 Ariz. 483, 487, 733 P.2d 1066, 1070 (1987) (citation omitted). We review the

adequacy of jury instructions in their entirety to determine if they accurately reflect the law. *State v. Hoskins,* 199 Ariz. 127, 145, ¶ 75, 14 P.3d 997, 1015 (2000). We review a trial court's decision on whether or not to give a jury instruction for abuse of discretion. *State v. Dann*, 220 Ariz. 351, 363-64, ¶ 51, 207 P.3d 604, 616-17 (2009). We review de novo, however, whether the jury was properly instructed. *Id.* at 364, ¶ 51, 207 P.3d at 617 (citations omitted).

¶11        Section 13-2512 (2010) provides in pertinent part:

> A.  A person commits hindering prosecution in the first degree if, with the intent to hinder the apprehension, prosecution, conviction or punishment of another for any felony, the person renders assistance to the other person.
>
> B.   Hindering prosecution in the first degree is a class 5 felony, except that it is a class 3 felony if . . .
>
>> 1.  The person knows or has reason to know that the offense involves . . . murder.

Section 13-2511 (2010) defines the offense of hindering prosecution in the second degree as hindering prosecution of "any misdemeanor or petty offense."

¶12        The court did not abuse its discretion in denying Tracy's request for an instruction on hindering prosecution of a misdemeanor or petty offense under A.R.S. § 13-2511, and instead instructing that in order to find Tracy guilty of the charged crimes under A.R.S. § 13-2512, the jury must find that he intentionally hindered prosecution of a felony. The evidence demonstrated that Tracy intentionally took steps to hinder prosecution of Jade for severely beating M.C. and then ejecting him from the bed of his pickup truck, causing his death. An instruction on the lesser-included offense of hindering the prosecution of a misdemeanor assault accordingly was not supported by the evidence, and the court did not err in refusing to give it.

¶13        Nor did the court abuse its discretion in instructing the jurors for purposes of determining the class of felony under A.R.S. § 13-2512(B) that if they found Tracy guilty of hindering prosecution, they were to determine whether the defendant knew or had reason to know that the offense involved murder. The evidence, again, supported such instruction. The evidence demonstrated that Tracy knew that night that M.C. had been severely beaten, ejected from the truck, and run over. Tracy acknowledged

that by the following day, when he hid the truck and ordered clean-up of the back bedroom, he knew that M.C. had been hospitalized, and by the day after that, when he drove Jade to a friend for hiding, that M.C. had died. This evidence demonstrated that at a minimum, Tracy should have known the night of the beating that M.C. might die, and thus, that Jade might be charged with murder. The statutory offense of hindering prosecution of a felony either involved murder, in which case it was a class 3 felony, or it did not involve murder, in which case it was a class 5 felony. See A.R.S. § 13-2512(B)(1). The court's instruction was supported by the evidence, accurately reflected the law, and was not erroneous.

¶14        Finally, the court did not commit reversible error in instructing the jury on different forms of murder, the last of which it defined as follows: "under circumstances manifesting extreme indifference to human life, [a person] recklessly engages in conduct that creates a grave risk of death, and thereby causes the death of another person." Tracy did not object to this instruction, or ask for further definition. He accordingly has waived all but fundamental error review of the matter. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22, 115 P.3d 601, 608 (2005). On fundamental error review, the defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *Id.* at 567, ¶ 20, 115 P.3d at 607. Tracy has failed to meet his burden. He argues that the court's failure to define "manifesting extreme indifference" caused "confusion to the jury and quite possibly a non-unanimous verdict." This claim of prejudice is based on sheer speculation, an insufficient basis to establish prejudice on fundamental error review. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14, 142 P.3d 701, 705 (App. 2006).

## C. Reduction of Jury

¶15        Tracy also argues that he was denied due process because of "jury irregularities," specifically the court's decision to excuse a juror who had reported she did not understand what was going on, and to reduce the jury to eight members after the prosecutor stipulated to withdraw allegations that might result in punishment of thirty years or more.

¶16        Tracy's claim fails, first, because he was not entitled to be tried by any particular jury, only a fair and impartial jury, and he has made no claim that the final eight jurors who ultimately convicted him were not fair and impartial. *See State v. Goldston*, 133 Ariz. 520, 521, 652 P.2d 1043, 1044 (1982) (citation omitted). Nor did the court commit constitutional error in reducing the twelve-member jury to an eight-member jury after the state

stipulated to withdraw allegations that might result in punishment of thirty years or more. *See State v. Soliz*, 223 Ariz. 116, 119 ¶ 12, 219 P.3d 1045, 1048 (2009).

¶17        Tracy suggests that the juror might have been feigning her lack of understanding because she was a hold-out juror, and the court's handling of this issue may have coerced or influenced a verdict. Because defense counsel failed to raise either of these objections below, we review these issues for fundamental error only. *Henderson*, 210 Ariz. at 568, ¶ 22, 115 P.3d at 608. Tracy has failed to meet his burden to show that the court erred, much less fundamentally erred to his prejudice in its manner of questioning this juror, and in determining it was necessary to excuse her. The juror told the court:

> Well, first I thought it was because everybody was talking at once, you know; and of course, the – the air conditioner over the top of me doesn't help. I can't hear it; but then, because I kept trying – and I told them not everybody can talk at once; and so, they stopped. I mean, they were nice about that, but then I realized what it was is that I'm not really not understanding any of it.

The court followed up with a question: "All right. So, you're – you're telling me that you just don't feel that you understand the testimony or the law, or what?" The juror responded: "All of it. It's like a different language." After confirming that it was only after starting deliberations that she realized she did not understand what was going on, the court asked, "But you're telling me now that you just – you don't understand what's going on enough to even participate in the deliberations?" The juror responded, "Yeah. I wouldn't be fair because I wouldn't even know how to answer anything." Neither counsel had any further questions for the juror, before the court told her to return to the jury room while the parties discussed how to proceed. Defense counsel agreed that it was necessary for the court to excuse the juror. Under these circumstances, the court did not err in excusing the juror. *See State v. Kolmann*, 239 Ariz. 157, 163, ¶ 26, 357 P.3d 61, 67 (2016) (juror's statements that she "was incapable of making a decision . . . would have warranted excusing her from the jury irrespective of her tentative inclination to vote not guilty or the other juror's advice to her.").

¶18        Nor were the court's questions of this juror of the nature that might have coerced or influenced her to reach a verdict. Tracy misplaces his reliance on *State v. McCrimmon*, 187 Ariz. 169, 927 P.2d 1298 (1996), in

which our supreme court feared that the trial court had "inadvertently created an atmosphere of coercion when it repeatedly communicated the implicit message to the lone hold-out juror that being undecided about a guilty verdict was unacceptable." *Id.* at 173, 927 P.2d at 1302. In this case, the court posed neutral questions to the juror, and elicited responses that defense counsel agreed required her dismissal. The court's handling of the circumstances in this case were not of the nature that would have coerced or influenced the verdict.

¶19 Tracy also argues that it was ultimately not necessary to reconstitute the jury because after the jurors returned to the courtroom and the court had excused the one juror, but before selecting the three more alternates, the foreman notified the court that the twelve-member jury had reached a verdict. Under those circumstances, Tracy argues, the juror who had reported she did not understand enough of what was going on to participate in deliberations "was either actually capable of doing so or she was coerced into reaching guilty verdicts." The court, however, had already determined that it was required to excuse the twelfth juror. Its decision not to accept the verdict and instead to order a reconstituted jury to deliberate accordingly was not error. *See State v. Martinez*, 198 Ariz. 5, 8, ¶ 11, 6 P.3d 310, 313 (App. 2000) (holding that the court did not err in refusing to accept verdicts from original jury, in light of its decision to discharge two jurors, and in instead ordering the reconstituted jury to begin deliberations anew).

¶20 Finally, Tracy argues that the court erred when it failed to expressly instruct the eight-member jury to begin deliberations anew and not to consider the reasons why the juror was excused, and instead implied the excused juror was "incompetent" by asking if anyone else wanted to be excused because they "didn't get it." Tracy did not raise these issues in the trial court, and accordingly has the burden to show error, that the error was fundamental, and that he was prejudiced thereby. *See Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607. Tracy has failed to meet his burden. No new person was introduced to the jury; rather, the number of jurors was reduced by four. Under those circumstances, it was not fundamental error to fail to direct the jurors to begin deliberations anew. Nor has Tracy shown how it was fundamental error, or that he was prejudiced, by the court asking, "Is there any one of you who feels that you need to be excused from serving on this jury because it's too hard, or because you don't understand what's going on, or you just don't get it? I mean, is there any of you who feel incapable of finishing out your jury service in this case?" Under these circumstances, the court did not err, much less fundamentally err, to Tracy's prejudice.

## CONCLUSION

**¶21**  For the foregoing reasons, we affirm Tracy's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA