723 P.2d 666

**STATE of Arizona, Appellee,**

v.

**Terry Lynn McCUTCHEON, Appellant.**

**No. 6626.**

Supreme Court of Arizona,
In Banc.

July 18, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Joseph T. Maziarz, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James H. Kemper, Deputy County Public Defender, Phoenix, for appellant.

CAMERON, Justice.

Defendant, Terry Lynn McCutcheon, was convicted of armed burglary, A.R.S. § 13–1508, seven counts armed robbery, A.R.S. § 13–1904, and nine counts of kidnapping, A.R.S. § 13–1304. He was sentenced to serve fifteen years on the armed burglary count; life on each armed robbery count; and twenty-one years on each kidnapping count. The sentences are to run concurrently. We have jurisdiction pursuant to art. 6, § 5(3) of the Arizona Constitution and A.R.S. § 13–4031.

We consider only one question on appeal and that is considering the totality of the circumstances, were the comments and questions of the trial judge to the jury so coercive as to require a mistrial?

The facts follow. During the early morning of 1 May 1984, two men armed with guns entered a Phoenix restaurant. The faces of the gunmen were covered by bandanas. They forced the restaurant personnel and patrons to lay on the floor and then robbed them. While the robbery was in progress, a policeman arrived at the restaurant. Apparently, one of the robbers, realizing the police had arrived, attempted to escape by jumping through a glass window. He was immediately arrested. The police identified him as Charles McDonald. Upon searching the restaurant, however, police were unable to locate the other robber.

Later, the police came to suspect defendant who resided with McDonald and McDonald's girlfriend, Shirley Erickson. While waiting outside Erickson's apartment, the police saw someone drive up in Erickson's car. A few minutes later, they saw defendant walk up to the apartment. They then arrested him. In the car, the police found bandanas and items taken in the restaurant robbery.

Defendant and McDonald were tried jointly. While McDonald chose to testify, defendant did not take the stand. After many days of testimony and a trip to the crime scene, the jury eventually returned a verdict of guilty on all counts as to each defendant. Defendant McCutcheon now appeals.

The jury began deliberations on 21 December 1984. After deliberating for nine hours over two days, the jury sent the trial judge a note stating that it could not agree on a verdict. The court responded with a written instruction urging that the jury reach an agreement.

Later, the jury sent to the trial judge another note, which stated: "If we declare a hung jury, will we have to each present our individual views in open court? *Two jurors believe there is not enough conclusive physical evidence and circumstantial evidence on all counts for both defendants.* signed, [Foreman]." (emphasis added). The trial court called the jury into open court and questioned the foreman.

THE COURT: We have called you back into the courtroom to discuss whether or not you can reach a verdict. Mr. Chavez, [foreman] I need to know whether you believe on behalf of the members of the jury whether or not there is any reasonable possibility or probable that the jury will be able to reach a verdict in a reasonable time? Before you answer that, I don't want you to tell me how many ballots you have taken. I don't want you to tell me what the split is or anything. Just whether or not you feel there is a reasonable probability the jury can reach a verdict within a reasonable period of time. Whether it be tonight or some other time.

MR. CHAVEZ: Now, on this answer, this question, when you say reasonable time, you are talking about tonight or a future—

THE COURT: * * * But my question right now, within a reasonable period of time, do you think this jury can reach a

verdict on the various counts on the two defendants?

MR. CHAVEZ: Well, from what I have determined, this jury cannot come to a unanimous decision.

THE COURT: On any?

MR. CHAVEZ: On any counts. That is, unanimous on all counts. We can't come to an unanimous—

THE COURT: —decision on any one?

MR. CHAVEZ: Not even on one. I have gone over all the jurors and I have gone over this to—I have asked that question, if there is even any single count on what we can all agree.

THE COURT: On either of the defendants?

MR. CHAVEZ: On either defendant.

THE COURT: All right.

\* \* \* \* \* \*

THE COURT: Can this jury, in your opinion, reach a verdict *on one count against one defendant?*

MR. CHAVEZ: I can't answer that question. I would have to go back into the room and ask that question. I have asked that question before.

THE COURT: You didn't have this case very long last night, I think just an hour or so. Was it not a couple of hours at the most? You have been at it all day long today. We have had a two week trial. We have had six days—twelve days—how many days? We have had, I think, four days one week and five days —six, okay. Do you think it's a probability that the jury, if you could recess now and come back some time in the future, you can then start again with your notes and read the jury instructions once again and *perhaps reach one verdict on one count against one defendant?*

(emphasis added).

The trial court then held a bench conference during which the state asserted that he thought the judge's last statement suggested that the jury should find one defendant guilty on one count. The judge disagreed with the state's assertion, and

further discussion at the bench followed. Then, in open court the judge said,

Ladies and gentlemen, I am in no way attempting to put any pressure on you to reach any verdict. I'm only trying to determine whether or not you have deliberated as far as you think you can go in order to reach a verdict.

The trial judge again asked the foreman whether the jury could return a verdict within a reasonable time. The foreman expressed a willingness to return to deliberations; however, when the judge asked the entire panel that question, the two holdout jurors individually asserted they did not intend to change their minds. The judge again asserted that she was not trying to pressure the jury but that she needed to determine whether further deliberations would be helpful. By a show of hands, the jury unanimously asserted it could not.

The trial judge then called the attorneys to the bench. Counsel for McDonald asserted that the jury should continue to deliberate and if necessary, the jury could break for the holiday and return the day after Christmas to continue their deliberations. Counsel for defendant McCutcheon, however, asserted that a mistrial should be granted.

Nevertheless, the judge told the jury she believed they had not had sufficient time to deliberate and therefore, she was not going to declare a mistrial. The trial judge ordered the jury to return 26 December 1984. On 26 December 1984, the jury deliberated almost six more hours and returned verdicts of guilty on all counts as to each defendant. From the denial of his motion for new trial, defendant appeals.

We have no quarrel with the attempt by the trial judge to urge the jurors to reach a verdict if they were able to do so without giving up their conscientious convictions. A trial judge does not, however, have free rein in attempting to get the jury to agree on a verdict.

A trial judge must be careful not to appear to influence a jury into making a particular decision or coerce a jury into a

verdict that the jury would not otherwise reach without compromising the beliefs of one or more jurors. As we have noted:

A trial judge is often presented with a dilemma in situations involving long deliberation by juries. If he insists on prolonging the deliberation after the jurors have expressed the feeling that they cannot reach a verdict, the trial judge may then be accused of trying to coerce a verdict.

*State v. Moore*, 108 Ariz. 532, 536, 502 P.2d 1351, 1355 (1972), *cert. denied*, 412 U.S. 906, 93 S.Ct. 2292, 36 L.Ed.2d 971 (1973).

■ The test of coerciveness is whether the trial court's actions or remarks, viewed in the totality of circumstances, displaced the independent judgment of the jurors. *See State v. Roberts*, 131 Ariz. 513, 642 P.2d 858 (1982). Influence and coercion has often been found where trial judges encourage a deadlocked jury to reach a verdict. *See Pfeiffer v. State*, 35 Ariz. 321, 278 P. 63 (1929) (where a judge's statement that the jury ought to be able to agree on some verdict amounted to comment on weight of evidence and his statement that he would give jury plenty of time to decide and he would stay the rest of the week amounted to coercion).

When the numerical division is known, particularly if the division is lopsided, encouraging the jury to decide can amount to coercion. In *State v. Roberts, supra*, we addressed the propriety of a trial judge's inquiry into the numerical division of the jury. The trial judge in *Roberts* knew the division but not whether the majority was for or against acquittal. 131 Ariz. at 514–515, 642 P.2d at 859–860. We held that under the totality of the circumstances the inquiry into the numerical division was not coercive. *Id.* at 516, 642 P.2d at 861. However, we condemned the use of such inquiry because "there is more danger of possible prejudice than any possible good which may result in employing the practice." *Id.* at 515, 642 P.2d at 860.

The California courts have also addressed the issue of inquiry into numerical division. The California Supreme Court held that when a trial judge knows how many jurors stand on each side of the ultimate issue and urges the jury to return a verdict, it "creates in the jury the impression that the court, which has also heard the testimony in the case, agrees with the majority of jurors. Coercion of the jurors in the minority clearly results". *People v. Carter*, 68 Cal.2d 810, 814, 69 Cal.Rptr. 297, 301, 442 P.2d 353, 357 (1968) (citations omitted).

■ In the instant case, there were two examples of coercion by the trial court. The first resulted from the fact that the judge knew the division of the jury. Admittedly, the trial judge inadvertently discovered that two jurors were in favor of acquittal. These two jurors adamantly asserted in open court that they did not intend to change their verdicts. In spite of the jury's assertion that it was deadlocked, the trial judge repeatedly asked whether the panel could reach a verdict on "one count against one defendant". Since the jury knew that the trial judge was aware the majority had voted for conviction, her repeated questions sent an inference that she agreed with the majority. We believe she implicitly communicated to the dissenters the message that she thought they should change their views, since that would be the only way, in all likelihood, a verdict could be reached. Any pressure to decide then was pressure to decide against the defendant.

Second, the form of the two questions could only indicate that the judge desired a conviction. The court asked on two occasions "Can this jury ... reach a verdict *on one count against one defendant?*" and

Do you think it's a probability that the jury, if you could recess now and come back some time in the future, you can then start again with your notes and read the jury instructions once again and *perhaps reach one verdict on one count against one defendant?*

(emphasis added).

The impact of these questions is that the jury must go back and find at least one

defendant guilty on at least one count before they could be released. As such, it was coercive. It was, therefore, error for the trial judge not to declare a mistrial or grant a new trial.

The matter is reversed and remanded for new trial.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.