943 P.2d 776

**STATE of Arizona, Appellee,**

v.

**Anthony Lee SABALA, Appellant.**

**No. 1 CA–CR 96–0178.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 28, 1997.

Review Denied Sept. 16, 1997.

Grant Woods, Arizona Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and John Pressley Todd, Assistant Attorney General Attorney, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender Attorney, Phoenix, for Appellant.

RYAN, Judge.

This appeal concerns a trial court's use of amended Rule 22.4, Arizona Rules of Criminal Procedure (effective December 1, 1995), when the jury announced it was at an impasse. We find no error and thus affirm Anthony Lee Sabala's ("Sabala") conviction and sentence on one count of theft, a class 4 felony under Arizona Revised Statutes Annotated ("A.R.S.") section 13–1802.

## FACTS[1] AND PROCEDURAL HISTORY

Sabala was driving a stolen car on the morning of August 18, 1995. There was another person in the car. Officer Michael Cantrell saw Sabala and discovered the car was stolen. When Sabala noticed the police car behind him, he began to speed away. After speeding through stop signs in a busy roadway, the stolen car turned into a parking lot and slowed down. Sabala and his passenger jumped out and fled in different directions. Officer Cantrell radioed a description of Sabala to other police officers and chased the passenger. Officer Cantrell caught and arrested the passenger.

Officer Russell Zeller was in uniform on bicycle patrol in the vicinity when he heard Officer Cantrell's radio description of Sabala. About ten seconds after hearing the radio description, Zeller saw Sabala running toward him and away from where the stolen car was abandoned. Sabala matched the suspect's description broadcast over the radio. When Sabala spotted Officer Zeller, he ran away, ignoring Zeller's commands to stop. Zeller eventually caught Sabala and arrested him.

On the day of the arrest and again at trial, Officer Cantrell identified Sabala as the driver of the stolen vehicle. At the police station, Sabala admitted that he knew he was driving a stolen car.

The state filed an information charging Sabala with theft. The state also alleged two prior felony convictions.

The case proceeded to a jury trial. Sabala testified that he was arrested as a result of mistaken identity, that he had nothing to do with the stolen car, and that his earlier admissions were false and were offered only because he wanted to end his "interrogation" by police after his arrest. (Sabala's police interview lasted twenty-three minutes.)

The jury began deliberating at 2:40 p.m. on a Tuesday. After two hours the jury foreman told the bailiff that the jurors had reached an impasse. The trial judge asked the bailiff to tell the jury to put the message in writing. In response, the jury sent the following note:

> Seven jurors voted guilty. The juror [is] voting not guilty because the juror believes that Mr. Sabala is not guilty. Please advise. We are at an impasse.

The trial court then issued an instruction, over Sabala's objection:

> This instruction is offered to help your deliberations, not to force you to reach a verdict.
>
> You may wish to identify areas of agreement and areas of disagreement. You

---

1. We view the facts in the light most favorable to sustaining the verdict, resolving all reasonable inferences against the defendant. *State v. At-wood*, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

may then wish to discuss the law and the evidence as they relate to areas of disagreement.

If you still have disagreement, you may wish to identify for the Court and Counsel which issues or questions or law or fact you would like Counsel or Court to assist you with. If you would like this option, please list in writing the issues where further assistance might help bring about a verdict.

Areas where the Court or Counsel may be able to assist you are in the giving of additional instructions, the clarifying of earlier instructions, directing the attorneys to make additional closing argument, reopening the evidence for limited purposes, or a combination of these measures.

I do not wish or intend to force a verdict. We are merely trying to be responsive to your apparent need for help. If it is reasonably probable that you could reach a verdict as a result of this procedure, it would be wise to give it a try.

The trial court adjourned and directed the jurors to return the next morning "and consider this instruction at that time."

The jury resumed deliberations the following day at 10:40 a.m. The court received a second note from the jury at 11:55 a.m. It stated:

We would like more clarification on how Tony's original confession was obtained. Did Tony volunteer the information himself or did an officer ask him specific questions and Tony just agreed with everything?

The trial court decided not to permit additional testimony, but ruled that the court reporter could read back portions of testimony and the attorneys could make additional arguments.

The jury returned to the courtroom and the reporter read back the relevant portion of Officer Cantrell's direct examination testimony. At the jury's request, the reporter also read back the relevant portion of Sabala's direct and cross-examination testimony on this issue. Defense counsel and the prosecutor then presented brief additional arguments. The court asked the jury whether it had further questions or wanted additional testimony read back, but no other questions or requests were submitted.

At 2:00 p.m. the jury resumed deliberations. Thirty minutes later the jury returned a guilty verdict. Sabala admitted two prior felony convictions, and the trial court sentenced him to an aggravated prison term of eleven years.

Sabala timely appealed. This Court has jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033.

## DISCUSSION

Sabala argues that the trial court coerced the jury verdict and that, consequently, this court should reverse the conviction. The test for coercion is " 'whether the trial court's actions or remarks, viewed in the totality of circumstances, displaced the independent judgment of the jurors.' " *State v. McCrimmon*, 187 Ariz. 169, 172, 927 P.2d 1298, 1301 (1996) (quoting *State v. McCutcheon*, 150 Ariz. 317, 320, 723 P.2d 666, 669 (1986)). To support his allegation of coercion, Sabala cites two factors: the court's knowledge of the numerical jury split, and the court's supplemental jury instruction. Sabala also argues that the court's failure to give a cautionary instruction along with the supplemental instruction contributed to the jury being coerced into reaching a verdict.

### A. Numerical Division Among Jurors

■ The jury spontaneously told the trial court it was split seven to one in favor of conviction. Sabala argues that this circumstance led to a coerced verdict, citing *State v. Lautzenheiser*, 180 Ariz. 7, 10, 881 P.2d 339, 342 (1994) ("*Lautzenheiser II*"), and *McCutcheon*, 150 Ariz. at 320, 723 P.2d at 669.

■ Although the trial court inadvertently became aware of the jurors' split, this fact does not amount to coercion *per se*. *McCrimmon*, 187 Ariz. at 172, 927 P.2d at 1302. While a known division among jurors creates "the potential for harm," *Lautzenheiser II*, 180 Ariz. at 10, 881 P.2d at 342, we evaluate the effect of the court's knowledge in view of the totality of the circumstances. *McCrimmon*, 187 Ariz. at 172, 927 P.2d at

1301 ("Disclosing the numerical division will not always indicate a coerced verdict."); *McCutcheon,* 150 Ariz. at 320, 723 P.2d at 669; *State v. Roberts,* 131 Ariz. 513, 516, 642 P.2d 858, 861 (1982).

In *McCutcheon,* a case involving multiple counts against more than one defendant, the supreme court found coercion where the trial judge inadvertently discovered that two members of the twelve-juror panel adamantly favored acquittal. The trial court issued further instructions after twice asking the jury to try and "reach a verdict on one count against one defendant." The supreme court found an implicit and improper message in the trial judge's actions:

> Since the jury knew that the trial judge was aware the majority had voted for conviction, her repeated questions sent an inference that she agreed with the majority. We believe she implicitly communicated to the dissenters the message that she thought they should change their views, since that would be the only way, in all likelihood, a verdict could be reached. Any pressure to decide then was pressure to decide against the defendant.

150 Ariz. at 320, 723 P.2d at 669.

In contrast, the trial judge here did nothing more than "inquire of the jurors to determine whether and how court and counsel can assist them in their deliberative process," as permitted by Rule 22.4 of the Arizona Rules of Criminal Procedure.[2] *See McCrimmon,* 187 Ariz. at 174, 927 P.2d at 1303. The instruction the trial judge read was, for the most part, recommended by the comment to Rule 22.4. Other than the court's knowledge of the numerical division, there is no evidence of coercion.

Therefore, this case is also distinguishable from *Lautzenheiser II.* In that case, the trial judge knew which juror was the "holdout" and encouraged further deliberations begin-

ning at 4:30 p.m. on New Year's Eve. 180 Ariz. at 11, 881 P.2d at 343. *McCrimmon* is also distinguishable. In that case, the dissenting juror

> was singled out twice during the polling process as the only juror who did not agree with the verdict. Once the numerical division was known, the trial court repeatedly told her, once in open court, and thereafter in their private meeting, that she would have to decide whether she agreed with the guilty verdicts.

187 Ariz. at 173, 927 P.2d at 1302. Sabala's case is more similar to *Roberts,* in which a conviction was affirmed even though the trial court inquired what the split was (and learned it was eleven to one) before sending the jury to deliberate further. 131 Ariz. at 515–16, 642 P.2d at 860–61.

The better practice, however, is for the court to instruct jurors to refrain from revealing the numerical split and whether they are inclined to acquit or convict. *Cf. State v. Dunlap,* 187 Ariz. 441, 930 P.2d 518 (1996) ("[T]rial court did not know the numerical division of the jurors' votes or which way the jury was leaning."). The jury note here announced that only one juror had voted not guilty. "From a pragmatic standpoint, when such a division is announced and ... seven pairs of eyes turn to look at the single holdout, it is impossible to conclude that the juror was not subjected to pressure after the jury had returned to the jury room." *Lautzenheiser II,* 180 Ariz. at 10, 881 P.2d at 342 (quoting *Roberts,* 131 Ariz. at 517, 642 P.2d at 862 (Feldman, J., dissenting)). But pressure always exists to some degree whenever jurors adopt majority and minority positions. Under the totality of circumstances test in general, and the *Roberts* decision in particular, the inherent pressure associated with being a lone dissenter does not, without more, amount to coercion. *See* 131 Ariz. at 516, 642 P.2d at 861.

---

2. The comment to the Rule states in part:
   Many juries, after reporting to the judge that they have reached an impasse in the deliberations, are needlessly discharged very soon thereafter and a mistrial declared when it would be appropriate and might be helpful for the judge to offer some assistance in hopes of improving the chances of a verdict. The judge's offer would be designed and intended to address the issues that divide the jurors, if it is legally and practically possible to do so. The invitation to dialogue should not be coercive, suggestive or unduly intrusive.

This jury never indicated that further deliberations would be futile. Its first note stated that the panel had reached an "impasse" and requested advice. The second note sought help of the kind available under Rule 22.4. These facts distinguish this case from the cases cited by Sabala. *Cf. Lautzenheiser II,* 180 Ariz. at 9, 881 P.2d at 341 (foreman stated that further deliberations would not be helpful); *McCutcheon,* 162 Ariz. at 59, 781 P.2d at 36 (jury informed trial court that division was "unresolvable" and that "no further discussion will be fruitful").

The sequence and timing of events further remove any fear that the verdict was coerced. After receiving additional instructions at the end of the afternoon on Tuesday, the jury resumed deliberations on Wednesday for one hour and fifteen minutes before asking a question about Sabala's confession. Had the jury resumed deliberations only to return a short while later with a guilty verdict, we might say that "the proof is in the pudding...." *Roberts,* 131 Ariz. at 517, 642 P.2d at 862 (verdict reached within fifteen minutes of resuming deliberations supports finding of coercion) (Feldman, J., dissenting); *see also State v. Lautzenheiser,* 177 Ariz. 26, 32, 864 P.2d 1058, 1064 (App.1993) (verdict reached twenty minutes after resuming deliberations supports finding of coercion) (Grant, J., dissenting), *rev'd, Lautzenheiser II,* 180 Ariz. at 11, 881 P.2d at 343.

Here, however, the jurors requested further advice and, after receiving it, resumed deliberations for thirty more minutes before returning a verdict. These facts suggest that the holdout juror changed position as a result of receiving clarifying information, not that he or she surrendered "honest convictions" due to overbearing pressure from the court. *See McCrimmon,* 187 Ariz. at 172, 927 P.2d at 1302 (finding that the court sent the holdout juror "a clear message that being undecided was unacceptable"); *Lautzenheiser II,* 180 Ariz. at 11, 881 P.2d at 343; *State v. McCutcheon,* 162 Ariz. 54, 60, 781 P.2d 31, 37 (1989) ("*McCutcheon II* ").

## B. Coercive Implications of the Supplemental Instruction

Sabala also asserts that the additional instruction based on the comment to Rule 22.4 implied "that it was the dissenter who needed to specify his misgivings with the state's case so that he could receive the 'help' necessary to change his verdict." This argument stands not on the content of the instruction, but on the fact that the trial court directed further deliberations knowing that only one juror favored acquittal. This argument is the coercion *per se* argument rejected in *Roberts. See* 131 Ariz. at 516, 642 P.2d at 861. The court's suggestion that the jury further deliberate, standing alone, could be construed as an order to the dissenter to reconsider. But Sabala fails to cite any particular defect in the instructions warranting such a conclusion.

■ Sabala also argues that by outlining the help available (additional instructions, clarification of earlier instructions, additional closing argument, reopening evidence for limited purposes), the court misled the jury into believing that it would remain impaneled "until it reached a verdict, even if that meant sitting through a second trial presented in bits and pieces." We do not see this implication. The court stated that the instruction was "offered to help your deliberations, not to force you to reach a verdict" and informed the jury that the court did "not wish or intend to force a verdict." *See Dunlap,* 187 Ariz. at 465, 930 P.2d at 542 (similar supplemental jury instruction and circumstances demonstrated "no coercive effect on the jury").

## C. Failure to Give a Cautionary Instruction

Sabala also cites the trial court's failure to remind the jurors that they were not to surrender their honest convictions in order to reach a verdict. Sabala did not object on this ground when the court delivered the additional instruction, so error in this regard will result in relief only if it amounts to fundamental error. *See, e.g., State v. Smith,* 138 Ariz. 79, 83, 673 P.2d 17, 21 (1983), *cert. denied,* 465 U.S. 1074, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984).

■ The trial court should have expressly admonished the jurors not to surren-

der their "honest convictions" for the sake of reaching a verdict. *Lautzenheiser II,* 180 Ariz. at 11, 881 P.2d at 343; *McCutcheon II,* 162 Ariz. at 60, 781 P.2d at 37. However, failing to do so does not amount to fundamental error. *McCutcheon II,* 162 Ariz. at 60, 781 P.2d at 37; *see also Roberts,* 131 Ariz. at 515–16, 642 P.2d at 860–61 (no fundamental error where trial court not only failed to give cautionary instruction but inquired about numerical division among jurors, learned of eleven to one split, and required further deliberations stating that there was "a lot of evidence"). Accordingly, we will not vacate the verdict on this ground.

**D. The Dissent**

We agree with the dissent's comments concerning the trial court's failure to warn the jurors not to disclose their vote and failure to specifically tell them not to surrender their honest convictions. Dissent op. at 422, 943 P.2d at 782. However, we disagree that these circumstances coupled with the recommended instruction from the comment to Rule 22.4 amount to coercion. Twice in that instruction the jury was told that the court did not intend or wish to force a verdict. Also, the instruction used qualifying language such as "may," and "[i]f ... reasonably probable." Use of such qualifying language eliminates any coercive suggestion. *State v. Michael,* 161 Ariz. 382, 386, 778 P.2d 1278, 1282 (App.1989) ("trial court's use of the words 'if possible' eliminates any coercive suggestion in the court's note"). Also, the jury's initial note, among other things, asked for advice. The trial court merely responded to the jurors' request in the spirit of the reformed jury rules. *See* B. Michael Dann and George Logan, III, *Jury Reform: the Arizona Experience,* 79 JUDICATURE 280, 283 (1996) ("This technique [use of Rule 22.4's recommended instruction] allows jurors to be more active than before and to take responsibility for articulating their needs for information required for their decision.").

Finally, the brevity of the trial should not be a significant factor. Deciding what is a short trial is difficult, and one court's short trial may be another court's nightmare. Further, each victim is entitled "[t]o a speedy trial or disposition and prompt and final conclusion of the case after conviction and sentence." Ariz. Const. art. 2, § 2.1; Ariz. R.Crim. P. 39. The instruction recommended by the comment to Rule 22.4 adequately protects both a defendant's right to each juror's individual judgment and the victim's right to a prompt resolution of his or her case. The instruction also encourages informed jury verdicts. *See* B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries,* 68 IND. L.J. 1229, 1230, 1261–62 and 1269 (1993). Use of that instruction here did not compromise the integrity of the verdict. The "holdout" juror was never identified to the court. Moreover, the court never emphasized that a verdict was desirable; instead it twice told the jurors that it was not trying to force a verdict. Additionally, the court used qualifying language, and no time pressures were present. These factors lead us to view the totality of the circumstances differently than the dissent.

**CONCLUSION**

We affirm the conviction and sentence of the trial court. We have not reviewed the remainder of the record for fundamental error. *State v. Smith,* 184 Ariz. 456, 459–60, 910 P.2d 1, 4–5 (1996).

FIDEL, J., concurs.

NOYES, Presiding Judge, dissenting.

I respectfully conclude that the totality of the following circumstances call for a reversal and remand for new trial:

1. When the court heard from the bailiff that the jury was at an impasse, it told the jury to put its message in writing but it failed to tell the jurors not to announce how they were split. This failure led to the court learning that the jurors had voted 7–1 for guilty. After that, everyone knew the sole reason for the impasse: one juror believed that defendant was not guilty.

2. The jury advised that it had voted 7–1 for guilty and that one juror "believes that Mr. Sabala is not guilty." The court then advised the jury to continue its deliberations, it gave some additional suggestions, and it

explained that, "We are merely trying to be responsive to your apparent need for help." Considering the context, it was apparent to all jurors that the only one in need of the court's "help" was the one who voted "not guilty."

3. The court should have advised the jurors not to surrender their honest convictions, but it failed to do so. "[W]henever further deliberations are ordered, it would be sound practice to remind jurors that they are not to surrender their honest convictions for the purpose of reaching a verdict, for 'under our system the judge is not allowed to help persuade a juror to surrender his conviction and conform.'" *State v. McCutcheon*, 162 Ariz. 54, 60, 781 P.2d 31, 37 (1989) (quoting *State v. Roberts*, 131 Ariz. 513, 517–18, 642 P.2d 858, 862–63 (1982) (Feldman, J., dissenting)).

4. This was a one-day trial that went into two days. When a trial is as simple and short as this one—and when the court knows the split—the court's "help" is a more-obvious suggestion that the minority juror join the majority than it would be in a complicated trial, or when the court does not know the split.

5. I agree with the majority that "pressure always exists to some degree whenever jurors adopt majority and minority positions." Maj. op. at 419, 943 P.2d at 779. That pressure is greatly increased when the court helps a jury towards unanimity in circumstances such as exist in this case, where it was clear to everyone that the jury could go home as soon as the minority juror joined the majority.

In my opinion, this jury reached unanimity because of judicial help which appeared to put unacceptable pressure on the minority juror. The cost of retrying this case is less than the cost of affirming this sort of "help" when the court knows that the only "problem" is one juror's belief that defendant is not guilty. Juror unanimity is desirable, yes, but not at the apparent expense of juror independence. The trial court was a well-intentioned pioneer on the Rule 22.4 frontier here; but on the facts presented, the trial court's effort to "help" the jury reach una- nimity was too clear a message that the minority juror should join the majority.