193 P.3d 807

**STATE of Arizona, Appellee,**

v.

**Eliezer RODRIGUEZ–ROSARIO, Appellant.**

No. 1 CA–CR 07–0438.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 19, 2008.

Terry Goddard, Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals Section and Sarah E. Heckathorne, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Kessler Law Offices by Eric W. Kessler, Mesa, Attorneys for Appellant.

**OPINION**

PORTLEY, Judge.

¶ 1 Eliezer Rodriguez–Rosario ("Defendant") challenges his convictions because a

juror, when polled, told the trial court he did not agree with the verdict. He argues that the court should have granted his motion for a mistrial. For the following reasons, we vacate the convictions and sentences and remand for a new trial.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶ 2 An undercover Phoenix police officer purchased twenty dollars of methamphetamine from Defendant in September 2006. Defendant was indicted and tried for possession of narcotic drugs for sale, a class two felony; possession of dangerous drugs for sale, a class two felony; and sale of dangerous drugs, a class two felony.[2] The jury found him guilty on all three counts.

¶ 3 After the verdict was read, the court polled the jury. When the deputy court clerk came to juror number 6, the following exchange took place:

COURT CLERK: Juror number 6, are these your true verdicts?

JUROR NO. 6: No.

THE COURT: Could you repeat that again?

JUROR NO. 6: No, I just went along with it.

THE COURT: You didn't agree with the jury verdict that was rendered by the fellow jury members, juror number 6?

JUROR NO. 6: I didn't believe the testimony of the police officers.

¶ 4 After the exchange and without completing the polling, the court sent the jury back to the jury room and met with counsel in chambers. After some discussion, both parties agreed that a mistrial was appropriate. The court and defense counsel expressed concerns that juror number six might be coerced into voting for conviction if the court ordered further deliberation. The court decided that the next step was to determine juror number six's verdict on the separate counts.

¶ 5 When the jury was brought back into the courtroom and re-polled as to the individual counts, juror number six agreed with the verdicts. The court then stated:

Juror number 6, I want to follow-up a little bit further with you. When you were first polled and I just asked generally whether these verdicts were in fact your true and correct verdicts, you seemed to indicate that they weren't, that you weren't sure that you believed the testimony. The jury was excused ... and then I brought you back. And your responses to those questions on an individual basis seemed to be yes they were your true and correct verdicts.

And I'm trying to—to have a clear understanding of what your true feelings are and what your verdicts are because I seem to be hearing two different things, and this is important. That's why I want to find out exactly what—what your thinking is and what basis of your—your statement now this is your true and correct verdict.

Before juror number six could respond, defense counsel requested a bench conference, after which the court dismissed all of the questioned juror number six about his vote:

THE COURT: On your vote. Your vote seems to have gone two different directions and [sic] trying to get clarification as to what is—what is your verdict, what is the basis of your decision, and what is the decision you want to declare to the Court and to the lawyers and to the defendant as to the verdict.

. . . .

JUROR NO. 6: I just feel that there were inconsistencies in the police officers' statements. They were small, but I felt they were inconsistent to me. So it—but as far as the rules that were read to me, and trust me, we went over hundreds of times in the jury room.

---

1. We view the evidence in the light most favorable to sustaining the verdict. *State v. Nihiser*, 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App. 1997).

2. Defendant was also indicted for misconduct involving weapons, but that count was dismissed during trial.

. . . .

THE COURT: But again, I'm trying to find out what your true verdict is.

JUROR NO. 6: Then I would say since I was the person that probably argued the most against some of the inconsistencies that I'm probably wrong, that I would probably go ahead and say that—that the verdict is guilty on all three counts.

THE COURT: Is that your true and correct verdict, decision on the evidence that was submitted to you for your deliberation?

JUROR NO. 6: From the evidence submitted, yes.

. . . .

[DEFENSE COUNSEL]: Yes. You have to make your own decision for yourself. Are you just going along with what the other people say or do you believe the State proved their case on each of the three counts?

JUROR NO. 6: I believe the State did prove their case.

[DEFENSE COUNSEL]: So this is your independent decision irrespective of how the other people voted?

JUROR NO. 6: Yes.

[DEFENSE COUNSEL]: Then why when you were first polled you said this is not my true verdict, I just went along with it?

JUROR NO. 6: I'm not sure.

[DEFENSE COUNSEL]: Was that an honest statement?

JUROR NO. 6: Yes.

¶ 6 Based on the discussion with the juror, the court found that the jury "ha[d] in fact returned a true and correct verdict . . . of guilty on all three counts." After Defendant unsuccessfully moved for a mistrial, the court sentenced Defendant to the mitigated term of five years in prison on the sale of dangerous drugs count, five years in prison on the possession of dangerous drugs for sale count, and four years in prison on the possession of narcotic drugs for sale count. The sentences were ordered to run concurrently. Defendant appeals, and we have jurisdiction pursu-

ant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001) and 13–4033(A)(1) (2001).

## DISCUSSION

¶ 7 Defendant contends that the trial court erred when it denied his motion for mistrial because the juror was coerced into agreeing with the guilty verdict. We review the denial of a motion for mistrial for a clear abuse of discretion. *State v. McCrimmon*, 187 Ariz. 169, 172, 927 P.2d 1298, 1301 (1996).

¶ 8 When a polled juror does not agree with the verdict, Arizona Rule of Criminal Procedure 23.4 provides, in pertinent part, that "the court may direct [the jury] to retire for further deliberations or they may be discharged." The two part process was reiterated in *State v. Hernandez*, 147 Ariz. 312, 709 P.2d 1371 (App.1985). There, a polled juror told the trial court that "his verdict was guilty but with reservations." *Id.* at 312, 709 P.2d at 1371. The judge then asked the juror if he needed more time to deliberate and when he indicated no more time was needed, the court asked him if his verdict was guilty and "he replied that it was." *Id.*

¶ 9 On appeal from the denial of the motion for new trial, we noted that "it is the court's duty to return the jury for further deliberations or dismiss the jury and declare a mistrial." *Id.* at 313, 709 P.2d at 1372 (citation omitted). We, however, found that because the juror did not wish to discuss his reservation and that upon further inquiry "the court determined from the juror that his verdict was guilty with no expression of reservation[,]" the court did not err in finding that the verdict was unanimous. *Id.*

¶ 10 This case does not pose a qualified response but a clear statement that the juror did not agree with the verdict. Defendant argues that the juror was coerced into agreeing with the verdict. "Jury coercion exists when the trial court's actions or remarks, viewed in the totality of the circumstances, displaced the independent judgment of the jurors. . . . What conduct amounts to coercion is particularly dependent upon the facts of each case." *State v. Fernandez*, 216 Ariz. 545, 548, 169 P.3d 641, 644 (App.2007)

(internal quotation marks and citations omitted).

¶ 11 Our supreme court identified circumstances that may give rise to a finding of coercion in *McCrimmon*. There, the first juror polled responded, "I guess, yeah." *McCrimmon*, 187 Ariz. at 170, 927 P.2d at 1299 (internal quotation marks omitted). After polling the other jurors and a bench conference, the court denied a motion for mistrial. *Id.* The court then asked the juror for a yes or no answer, but the juror could not agree to a one-word answer. *Id.* The court declared a recess and, at the juror's request and with the knowledge of both counsel, had an ex parte discussion with the juror. *Id.* During that meeting, the judge told the juror that when the proceedings resumed he would ask her the same question and asked how she would answer. *Id.* She answered that "it would have to be yes" but could not say that it was beyond a reasonable doubt. *Id.* The court advised counsel of the conversation and reconvened the jury after lunch. *Id.* at 170–71, 927 P.2d 1298 927 P.2d at 1299–1300. The jury was reinstructed on the presumption that the defendant is innocent; that the State has the burden of proof beyond a reasonable doubt; and that each juror had to decide the case for themselves. *Id.* at 171 n. 2, 927 P.2d at 1300 n. 2. The jury, after deliberating for two hours, again returned a guilty verdict that all agreed upon. *Id.*

¶ 12 Our supreme court, in examining the coercion issue, found that the reluctant juror had been singled out twice, that the trial court's words and actions sent her a clear message that being undecided was unacceptable and failed to tell her that her inability to find guilt beyond a reasonable doubt could be a disaffirmation of the verdict. *Id.* at 173, 927 P.2d at 1302. The court then stated "[w]e fear that the trial court ... inadvertently created an atmosphere of coercion when it repeatedly communicated the implicit message to the lone hold-out juror that being undecided about a guilty verdict was unacceptable." *Id.*

¶ 13 *McCrimmon* and other cases define when coercion may occur. First, if the jury is deadlocked, the court's inquiry into the numerical division of the split may result in coercion. *Id.* at 172, 927 P.2d at 1301 (stating that in general, inquiry into the numerical division of a jury tends to be coercive). When the court makes such an inquiry, and it becomes known that there is a single holdout juror, the juror will likely be subjected to pressure when the jury returns to the jury room. *State v. Sabala*, 189 Ariz. 416, 419, 943 P.2d 776, 779 (App.1997) (noting that there is inherent pressure associated with being a lone dissenter) (citation omitted). Although the revelation of a numerical division creates the potential for harm, it does not amount to coercion *per se*. *Id.* at 418, 943 P.2d at 778.

¶ 14 A second circumstance that may give rise to a finding of coercion is "any contact between a judge and any member of a deliberating jury." *McCrimmon*, 187 Ariz. at 173, 927 P.2d at 1302. If the polling of a jury indicates that a juror does not agree with the verdict, Rule 23.4 provides that "the court may direct [the jury] to retire for further deliberations or [the jury] may be discharged." The trial judge also has the discretion to "make discreet inquiries *of the jury as a whole* to decide whether the jury is deadlocked *or whether further deliberations* might be useful." *McCrimmon*, 187 Ariz. at 174, 927 P.2d at 1303 (citation omitted and emphasis added). The court should, however, refrain from communicating with an individual member of the jury because such contact "is pregnant with possibilities for error." *See id.* at 173, 927 P.2d at 1302 (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)).

¶ 15 Here, the court polled the jury and juror number six stated he did not agree with the verdict. He stated that he "just went along with" the verdict even though he disagreed with it. During the in-chambers discussion between the court and counsel, the jury was sent back to the jury room. When they were brought back into open court, the court stated:

> What I've decided to do, ladies and gentlemen of the jury, is to have each of you polled on an individual basis as to each of

the three forms of verdict that were returned to—to me with a finding of guilty by the jurors. So we'll do it as to each count and starting with the first form, and the clerk will read it off and go down. The court did not inquire whether the jury had discussed juror number six's disagreement or other matters.

¶ 16 Each juror, during the re-polling, indicated agreement with each count of the verdict. The court then started to question juror number six to determine what his true verdict was but did so after the other jurors were returned to the jury room. The juror told the court and defense counsel that his true verdict was his re-polled verdict of guilty.

¶ 17 Although the trial court was trying to discern the juror's true vote, the court appreciated there was the potential for coercion when it stated:

> As I said, my concern with what I expressed on-the-record, if the juror were to—to upon further reflection change his mind he might feel—and this is my concern—that he might feel that he was pressured into this by circumstances and will be perhaps against his better judgment and not truly of his feeling, and he may be doing this for reasons that he might not perceive being—again, his testimony—I mean his—his statement was that he didn't believe the testimony of the police officers. I'm not sure that's going to change upon further discussion. That's his belief.

¶ 18 And, once the court decided to re-poll the jurors on the individual counts, all eyes were on juror number six. *See State v. Lautzenheiser*, 180 Ariz. 7, 10, 881 P.2d 339, 342 (1994) (citation omitted). Even without knowing what occurred during the brief time that the jurors had together after the juror's statement and before re-polling, "it is impossible to conclude that the juror was not subjected to pressure after the jury had returned to the jury room." *Id.*

¶ 19 In fact, after juror number six changed his vote, he reaffirmed that he believed that there were inconsistencies in the police officers' statements. He also stated, "[t]hen I would say since I was the person

that probably argued the most against some of the inconsistencies that I'm probably wrong, that I would probably go ahead and say that—that the verdict is guilty on all three counts." His statement reflects the sentiment of his original statement that he "just went along with" the verdict even though he disagreed with it. Accordingly, given the totality of the circumstances, once the court learned that the juror changed his vote even though he held essentially the same doubts about the officers' testimony that led him to disagree with the verdict during the first polling, the court should have granted the mistrial motion and the failure to do so was an abuse of discretion.

## CONCLUSION

¶ 20 For the following reasons, we vacate Defendant's convictions and sentences and remand for a new trial.

CONCURRING: PATRICK IRVINE, Presiding Judge and PATRICIA K. NORRIS, Judge.

