NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAY DEE BEATTE, JR., *Appellant.*

No. 1 CA-CR 19-0503
FILED 10-8-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201600440
The Honorable Billy K. Sipe, Jr., Judge *Pro Tempore*

**VACATED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

**B A I L E Y**, Judge:

¶1        Jay Dee Beatte, Jr., appeals his conviction and sentence for molestation of a child, a Class 2 dangerous felony and dangerous crime against children ("DCAC").  Under very unusual circumstances resulting when a juror stated that he disagreed with his previously announced verdict, the trial court erred in its follow-up discussion with the juror by going beyond what was appropriate to determine if further deliberations were warranted.  Accordingly, we vacate Beatte's conviction and resulting sentence.

**FACTS AND PROCEDURAL HISTORY**

¶2        After a one-day trial, Beatte's case was submitted to the jury for deliberations.  The jury deliberated for just under two hours before informing the court it had reached a verdict.  According to the verdict form, the jury found Beatte guilty of one count of molestation of a child and further found the offense was a DCAC.[1]  The court polled the jury at Beatte's request.

¶3        Eleven of the twelve jurors affirmed that their true verdict was guilty.  However, when the court asked Juror 13, who was the presiding juror, whether the verdict was his true verdict, Juror 13 said "no." The court then engaged Juror 13 while the parties and the rest of the jury panel were present:

> The court:  It is not your true verdict?
> The presiding juror:  No.
> The court:  And can you explain that to me.
> The presiding juror:  I didn't believe part of the
> evidence.

---

[1] The jury was given two verdict forms, one for a not guilty verdict and the other for guilty.  The guilty verdict form asked the jury to determine whether the DCAC allegation was "proven" or "not proven."

> The court: Okay. Well, you signed the verdict form "guilty," and the defendant can be found guilty only if the jury is unanimous. So you now disagree with the verdict that's been announced here in court?
>
> The presiding juror: Well, everybody else said yes, and so that — that was — you asked for the truth and I told you.
>
> The court: I'm sorry?
>
> The presiding juror: I said you asked us to be truthful when — when we asked (sic), and I said, "No."
>
> The court: All right. And — and you do have to be truthful. And, again, if you disagree with the verdict — you've already told me you disagreed with the verdict. So you voted for the guilty verdict. Was not your true vote? Your true verdict, individually?
>
> The presiding juror: Well, I — I — I agreed with a lot of stuff, but there was something that I was hung up on that I believe was — just wasn't right. It wasn't — that's the way I — that's the way I feel. That's — I — I can live with my decision.

¶4       The court explained to Juror 13 that the verdict in a criminal trial must be unanimous. The court attempted to verify Juror 13's true verdict, stating "if you disagree with your original vote and you are changing your vote, now is the time to tell me." The court then advised the panel that jurors should hold on to their honest convictions and their beliefs as to what the evidence shows. After the court's advisement, Juror 13 stated, "I'll go with what I signed here."

¶5       At this point, the court asked whether further deliberations would assist the jury. As presiding juror, Juror 13 explained "[w]e would come up with the same," before the court interrupted, interjecting that "it might be only [Juror 13] would need to answer this question." The court continued:

> In other words, I'm getting the impression that you don't want to find the defendant guilty, you have other concerns or other issues that perhaps should have been addressed further by the jury

3

> collectively, and you — you think it will be
> beneficial to go back and rediscuss (sic) these
> issues — or perhaps even come back tomorrow
> — you can certainly do so.

**¶6**        Juror 13 elaborated that he "agreed with the jurors" but was struggling with the last line of the verdict form, which used the word "proven." The court confirmed Juror 13's statement that he agreed with the guilty verdict but didn't agree it was a DCAC. The court continued to speak with Juror 13 in the presence of the parties and the rest of the panel:

> The court:  Okay, so you agree with the guilty
> verdict, but the concern you had is whether this
> is a [DCAC]?
> The presiding juror:  Yes.
> The court:  And a [DCAC] has a very specific
> definition, which is included in your
> instructions.  So do you think it would help if
> you go back, collectively, as the jury as a whole,
> and go back and rediscuss that issue and
> perhaps reread the definition?

**¶7**        Juror 13 explained he agreed the DCAC definition applied, but "by [his] own conviction, [he didn't] believe it was." Juror 13 agreed the jury would still arrive at a guilty verdict. The court explained, "I'm getting the impression you agree with the guilty verdict, but you perhaps disagreed with whether it's a [DCAC]. And, again, that has a very specific definition that is in your instruction packet." The court asked if additional argument limited to only the DCAC finding would be helpful, to which Juror 13 agreed it would. Neither attorney objected to presenting additional argument.

**¶8**        After the supplemental arguments, the court instructed the jury to return for deliberations, advising them to "re-deliberate this particular issue." He further advised the jury to hold to their strong convictions, but "you do have to follow the law and the evidence in the case." The jury was excused for further deliberations at 5:52 p.m. The jury deliberated for four minutes before returning to court to announce it unanimously found the DCAC allegation proven. While the jury was redeliberating, Beatte's counsel raised whether a mistrial was appropriate but did not formally move for one. The court declined to declare a mistrial and accepted the verdict.

**¶9**        Following trial and the aggravation hearing, Beatte filed a motion for a new trial arguing the trial court had coerced the verdict. The trial judge reassigned the motion for a new trial to another judge. After oral argument, the court denied the motion for new trial.

**¶10**        The trial court sentenced Beatte to twenty-eight years in the Department of Corrections, followed by four years of probation with 414 days of presentence incarceration credit. This court has jurisdiction over Beatte's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶11**        On appeal, Beatte challenges his conviction by arguing the court coerced the verdict and erred by denying his motion for a new trial. We review the denial of a motion for new trial for abuse of discretion. *State v. Hoskins*, 199 Ariz. 127, 142, ¶ 52 (2000). "[W]henever a judge improperly influences or coerces a verdict, the defendant is denied 'a right essential to his case.'" *State v. Lautzenheiser*, 180 Ariz. 7, 10 (1994). At the outset, we agree that "the use of the word 'coercion' in circumstances such as these is both unfortunate and unnecessary, as nothing so strong need be shown to justify relief." *Id.* at 11.

**¶12**        Arizona Rule of Criminal Procedure ("Rule") 23.3(a) provides a clear process for the polling of juries:

> After the jury returns a verdict and before the court dismisses the jury, the court must poll the jury at the request of any party or on the court's own initiative. If the jurors' responses to the poll do not support the verdict, the court may direct them to deliberate further or the court may dismiss the jury.

**¶13**        The court thus had two options after hearing Juror 13's negative response to the poll question: order further deliberations or dismiss the jury. *See State v. Rodriguez-Rosario*, 219 Ariz. 113, 115, ¶ 8 (App. 2008) (discussing the court's options when polling reveals a juror does not agree with the verdict). In the absence of ambiguity in the polled juror's response, an inquiry into the juror's unexpected polling answer is not permitted. *See State v. Hernandez*, 147 Ariz. 312, 313 (App. 1985). Though the court ultimately directed further deliberations, the intermediate

colloquy between the court and Juror 13 gave rise to Beatte's juror coercion claim.

¶14    Jury coercion constitutes reversible error. *State v. Cruz*, 218 Ariz. 149, 167, ¶ 112 (2008). It "exists when the trial court's actions or remarks, viewed in the totality of the circumstances, displaced the independent judgment of the jurors. . . . What conduct amounts to coercion is particularly dependent upon the facts of each case." *Rodriguez-Rosario*, 219 Ariz. at 115, ¶ 10 (omission in original) (quoting *State v. Fernandez*, 216 Ariz. 545, 548 (App. 2007)). When determining whether jury coercion occurred, we look at the following factors: the circumstances surrounding the deliberations, if and how the court learned of the numerical division of the jury, whether any cautionary instructions were given, whether any jurors were singled out, whether the jury agreed additional deliberations would be useful, and the length of the secondary deliberations. *Lautzenheiser*, 180 Ariz. at 9–11; *State v. McCutcheon*, 150 Ariz. 317, 319–21 (1986) ("*McCutcheon I*"). We address each factor in turn.

Circumstances of Deliberations

¶15    In some cases, the circumstances surrounding deliberations should cause "a high degree of caution and suspicion." *Lautzenheiser*, 180 Ariz. at 9. In *Lautzenheiser*, for example, the court concluded the circumstances contributed to an atmosphere of coercion when the jury began deliberations late in the day on New Year's Eve in a criminal Driving Under the Influence case. *Id.*

¶16    In this case, neither party on appeal suggests the backdrop against which the verdict was reached was coercive, and we conclude this factor does not weigh heavily in favor of finding jury coercion. Although the case was submitted to the jury late in the afternoon, merely submitting a case to the jury at that time does not amount to coercion. *See State v. Sabala*, 189 Ariz. 416, 420 (App. 1997) (concluding giving jury additional instructions at the end of the afternoon did not suggest coercion).

Knowledge of Numerical Division

¶17    "Disclosing the numerical division will not always indicate a coerced verdict." *State v. McCrimmon*, 187 Ariz. 169, 172 (1996). However, "the fact that the numerical division of the jury was revealed can be important when considering the totality of the circumstances." *Id.* In *Lautzenheiser*, as in this case, the trial court inadvertently learned of the lone dissenting juror while polling the jury after a verdict was returned. 180 Ariz. at 8–9.

¶18        This factor weighs in favor of finding jury coercion. As in *Lautzenheizer*, once the lone dissenter was identified, the potential harm should have been immediately apparent. *See id.* at 10. "[F]rom a pragmatic standpoint, when such a division is announced and eleven . . . pairs of eyes turn to look at the single holdout, it is impossible to conclude that the juror was not subjected to pressure after the jury had returned to the jury room." *Id.* (quoting *State v. Roberts*, 131 Ariz. 513, 517 (1982) (Feldman, J., dissenting)). Although the inherent pressure of being the lone dissenter without more does not amount to coercion, in this case, the revelation allowed the court to focus repeated questions on Juror 13 while the entire panel was present. This affected the next factor: whether Juror 13 was singled out.

Singling Out a Juror

¶19        Trial courts have been repeatedly cautioned against "any contact between a judge and any member of a deliberating jury." *McCrimmon*, 187 Ariz. at 173; *see, e.g.*, *State v. Huerstel*, 206 Ariz. 93, 101, ¶ 23 (2003); *Rodriguez-Rosario*, 219 Ariz. at 116, ¶ 14. Our supreme court has found coercion where a juror was singled out only twice as part of the polling process. *See, e.g.*, *Lautzenheiser*, 180 Ariz. at 9–10; *Huerstel*, 206 Ariz. at 101, ¶ 24.

¶20        This factor weighs in favor of finding coercion because the court's questioning exceeded what was necessary to determine if additional deliberations were warranted. The court's initial follow-up to Juror 13's revelation that the guilty verdict was not his true verdict was appropriate and even benefitted Beatte in that the court did not accept the verdict after Juror 13 commented that "I can live with my decision" and "I'll go with what I signed here." However, once the court confirmed that Juror 13 did not agree with the entirety of the verdict, it should have ceased questioning Juror 13 and either directed the jury to deliberate further or dismissed the jury. *See* Ariz. R. Crim. P. 22.4, 23.3; *see also Rodriguez-Rosario*, 219 Ariz. at 115, ¶ 9. The court's failure to allow Juror 13's "no" to stand arguably suggested to both Juror 13 and the entire panel that Juror 13's answer was not acceptable. *See McCutcheon I*, 150 Ariz. at 320 (finding the judge's repeated questioning sent implicit message the jurors should change their votes). "[W]hen a trial judge knows how many jurors stand on each side of the ultimate issue and urges the jury to return a verdict, it 'creates in the jury the impression that the court, which has also heard the testimony in the case, agrees with the majority of [the] jurors.'" *Id.* (quoting *People v. Carter*, 68 Cal.2d 810, 814 (1968), *abrogated on different grounds by People v. Gainer*, 19 Cal.2d 835 (1977)).

**¶21**        The State argues that Juror 13's status as presiding juror requires us to give the trial court greater latitude regarding its questioning of Juror 13.  It asserts the court needed to ensure that Juror 13 understood his role, the jury understood and followed the instructions, and the signed verdict represented the jury's true verdict.  In support of its argument, the State relies on *Hernandez*, 147 Ariz. 312 (App. 1985), and *State v. Hansen*, 237 Ariz. 61 (App. 2015).  But although both cases recognize that "there is a duty upon the court to ascertain that the verdict was reached unanimously," they both reaffirm that "if there is doubt, it is the court's duty to return the jury for further deliberations or dismiss the jury and declare a mistrial." *Hernandez*, 147 Ariz. at 313; *see Hansen*, 237 Ariz. at 66, ¶ 14.  Both *Hernandez* and *Hansen* therefore support Rule 23.3(a)'s requirement that "[i]f the jurors' responses to the poll do not support the verdict, the court may direct them to deliberate further or . . . dismiss the jury."  *See* Ariz. R. Crim. P. 23.3(a).  Considering this, this factor weighs in favor of finding coercion.

Ordering Further Deliberations

**¶22**        Remanding the jury for additional deliberations when the jury denies that additional considerations would help can contribute to a finding of coercion.  *See Lautzenheiser*, 180 Ariz. at 10; *McCutcheon I*, 150 Ariz. at 319–20.

**¶23**        This factor weighs in favor of finding coercion.  After the trial court repeatedly asked Juror 13 if he agreed with the verdict, it asked if more deliberations would be helpful.  Juror 13 began to explain "we would come up with the same," before the court interrupted him.  The court asked Juror 13 a second time if additional deliberations would be useful, and the response was similar—that the jury would still reach a guilty verdict.  Despite Juror 13's statement that he did not think additional deliberations would be helpful, the court still offered and ordered supplemental argument (which Juror 13 agreed would be helpful) on the DCAC finding, then remanded the jury for additional deliberations.

**¶24**        The court's summary of Juror 13's issue with the DCAC portion of the verdict was one logical explanation of the juror's changed mind, but because the court's questioning was so prolonged, it is unclear from the record whether Juror 13 volunteered the DCAC explanation or simply acquiesced to the court's repeated questioning.  Compounding the issue is that the elements of the crime mirrored the elements of a DCAC. When combined with Juror 13's initial statements that he did not believe some of the evidence, the court's assumptions and narrowing of the issues was even more problematic.

¶25      Remanding the jurors for additional deliberations was akin to the courts' actions in *Lautzenheiser* and *McCutcheon I*. In both cases, the trial court remanded the jury for additional deliberations, despite the jury's indication that additional deliberations would not be helpful. *Lautzenheiser*, 180 Ariz. at 10; *McCutcheon I*, 150 Ariz. at 319–20. In both cases, the Arizona Supreme Court found these actions supported a finding that the verdict was coerced. *Lautzenheiser*, 180 Ariz. at 11; *McCutcheon I*, 150 Ariz. at 320–21. We conclude this factor supports a finding of coercion.

### Instructing the Jury

¶26      When a trial court knows of the numerical division of the jury, it must exercise caution when instructing the jury. *Cruz*, 218 Ariz. at 167, ¶ 114. After the court singled out Juror 13, it gave the cautionary instruction that the jurors must hold onto their honest convictions. However, by the time the court gave this instruction, it had already questioned Juror 13 multiple times about his disagreement with the verdict. The court's questions suggested to Juror 13 that the court did not agree with his true verdict of not guilty. *See McCrimmon*, 187 Ariz. at 173 (finding the court's actions sent the lone dissenting juror a clear message that being undecided was unacceptable).

¶27      We must evaluate whether any of the court's actions or remarks "displace[d] the independent judgment of the jurors." *Rodriguez-Rosario*, 219 Ariz. at 115, ¶ 10. When Juror 13 indicated he disagreed with the DCAC finding, the court told Juror 13 that DCAC "has a very specific definition, which is included in your instructions." Juror 13 explained the definition as read applied, but by his own conviction, he did not agree the crime was a DCAC. Juries "have the power to ignore the law in their verdicts." *State v. Paredes-Solano*, 223 Ariz. 284, 293, ¶ 26 (App. 2009). The record indicates Juror 13 did not want to apply the DCAC definition to this crime. Although it was Juror 13's prerogative to ignore the definition, the court twice reminded Juror 13 a DCAC has a specific definition and asked whether it would be helpful for the entire jury to go back and reread the definition. By repeatedly reminding Juror 13 of a DCAC's specific definition and directing the jury to reread only that definition during their second deliberations, the court displaced Juror 13's independent judgment. *See Rodriguez-Rosario*, 219 Ariz. at 115, ¶ 10. We conclude this factor also weighs in favor of a finding of coercion.

Length of Second Deliberations

**¶28** The State argues the length of the second deliberations supports a verdict based on overwhelming guilt. We disagree. The jury deliberated for less than four minutes. The State cites two cases in support of its argument, neither of which furthers the State's position. In *State v. Dalton*, after the alternate juror was substituted in, the jury deliberated for forty-three minutes. 241 Ariz. 182, 184, ¶ 4 (2016), *abrogated on other grounds by State v. Escalante*, 245 Ariz. 135 (2018). The *Dalton* court did not find any evidence of jury coercion or acquiescence by the alternate juror to the majority. *Id.* at 187–88, ¶¶ 21–23.

**¶29** In *Lautzenheiser*, the jury deliberated for twenty to twenty-five minutes before returning a guilty verdict. 180 Ariz. at 9. The appellate court, in finding the deliberation period to be too short, stated, "[u]nder these circumstances, and in the absence of any cautionary instructions, it is hard not to imagine the discussion that ensued when the jury retired to deliberate for the second time, nor is it surprising that a guilty verdict was reached so quickly thereafter." *Id.* at 10.

**¶30** The State argues Beatte's failure to object suggests a lack of coercion or that a coercive environment was not immediately apparent. Considering the circumstances, even if an objection had been made sooner, we do not agree the situation would be so easily remedied. *See id.* at 11 (finding overwhelming evidence of coercion would not have been cured by a timely objection).

**¶31** Based on the factors above and the totality of the circumstances, we conclude that the court's discussion with Juror 13 constituted jury coercion. Although the circumstances of the deliberations alone were not coercive, and the court gave a cautionary instruction, the court's knowledge of the numerical division, the singling out of Juror 13, the order to continue deliberating when the jury did not agree it would be helpful, and the length of the secondary deliberations all weigh in favor of a finding of coercion. We again note that the term "coercion" is unfortunate in this context. The superior court faced very unusual circumstances and was clearly trying to craft a remedy without necessarily dictating how the jurors should vote. Nevertheless, because the court's discussion went beyond what was appropriate to determine whether further deliberations were warranted, we vacate Beatte's conviction and sentence and remand for a new trial.

**¶32**          Finally, given our decision to remand, we address an additional issue that may arise if this matter is re-tried.  At oral argument, both Beatte and the State agreed the jury was not required to find whether the molestation conviction constituted a DCAC.   Both parties acknowledged that the jury necessarily made the DCAC finding when it convicted Beatte of molestation.  *See* A.R.S. § 13-1410 ("A person commits molestation of a child by intentionally or knowingly engaging in . . . sexual contact . . . with a child who is under fifteen years of age."); A.R.S. § 13-705(Q)(1)(d) ("[DCAC] means any of the following that is committed against a minor who is under fifteen years of age: . . . molestation of a child.").  Because the DCAC finding is inherent in the crime of molestation, the jury was not required to make any additional DCAC findings.  *See State v. Larin*, 233 Ariz. 202, 212, ¶ 38 (App. 2013) ("[A] jury need not make a finding of dangerousness where it is 'inherent in the crime.'") (quoting *State v. Gatliff*, 209 Ariz. 362, 366, ¶ 18 (App. 2004)); *see also State v. Fernandez*, 216 Ariz. 545, 553, ¶ 27 (App. 2007) (concluding the DCAC finding was inherent in guilty verdict of "intentional, premeditated, attempted murder of each of the four victims under the age of fifteen years").  Consequently, on remand, should the jury convict Beatte of molestation, it need not be instructed to determine whether the conviction constitutes a DCAC.

## CONCLUSION

**¶33**          We vacate Beatte's conviction and sentence and remand for proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA

11